## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

CIVIL ACTION NO. 3:11-CV-00207-JHM

ROXANN PIXLER                                                          PLAINTIFF

V.

ANTHONY HUFF, et. al.                                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Brian N. Sly's Motion to Dismiss [DN 10];

Defendants A. Huff, S. Huff, Michele Brown, Anthony Russo, River Falls Investments, LLC,

Oxygen Unlimited, LLC, River Falls Equities, LLC, SDH Realty, Inc., W.A. Huff, LLC, and The

Huff Grandchildren Trust's Motion for More Definite Statement [DN 12]; Defendant Thomas

Bean's Motion to Dismiss [DN 30]; Defendant Huff Farm (Horsebranch) Inc.'s Motion to Dismiss

[DN 34]; and Plaintiff Roxann Pixler's Motion to Strike [DN 33] and Motion for Extension of Time

[DN 36].  Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

This case centers around the creation and operation of Midwest Merger Management, LLC

("MMM").  In 2001, Plaintiff Roxann Pixler's husband, Danny Pixler, and Anthony Huff ("A.

Huff") formed MMM.  (Amend. Compl. at ¶ 18.)  For reasons that are not entirely clear to the Court,

Pixler and A. Huff placed their shares in the company in their respective wives' names.  (Id.)  On

July 20, 2001, MMM filed its Articles of Organization, which listed two members, Plaintiff and

Sheri Huff ("S. Huff").  (Id. at ¶ 19.)  It appears that MMM was run entirely by Pixler and A. Huff,

and that Plaintiff had no involvement with the operations of the company.  At some point, Michele

Brown became the secretary and personal assistant to A. Huff and became involved with MMM.

(Id. at ¶ 21.)  In MMM's 2002 Annual Report, Brown was listed as a member or manager of MMM, along with Plaintiff and S. Huff.  (Id. at ¶ 20.)  When MMM was initially created, Brian N. Sly, a California business man, loaned the business approximately $3.9 million dollars.  (Id. at ¶ 43.)

MMM was established as a "risk manager."  (Id. at ¶ 23.)  In this line of work, MMM would collect premiums and fees from clients and would in turn pay premiums to insurance carriers that provided workers' compensation insurance coverage.  (Id. at ¶ 24.)  MMM also provided consulting services to various entities.  (Id. at ¶ 25.)

In 2004, MMM acquired Certified Services, Inc., which itself owned several subsidiaries. (Id. at ¶ 27.)  Beginning in 2005, A. Huff established several companies including, Oxygen Unlimited, LLC; Oxygen II, LLC (later renamed River Falls Investments, LLC); O2 HR, LLC; O2 HR Safety & Claims, LLC (later renamed W. Anthony Huff, LLC and renamed again River Falls Equities, LLC); W.A. Huff, LLC; and SDH Realty, Inc.  (Id. at ¶¶ 29-32, 41, 42.)  Thomas Bean, helped A. Huff establish and manage River Falls Investments, LLC and River Falls Equities, LLC. (Id. at ¶44.)  In her Amended Complaint, Plaintiff alleges that A. Huff used at least two of these entities, SDH Realty, Inc. and W.A. Huff, LLC, to funnel money from MMM for illegal purposes. (Id. at ¶¶ 41-42.)

In 2006, Plaintiff was told that her share in MMM was virtually worthless.  (Id. at ¶ 35.) However, A. Huff expressed interest in purchasing her share and paid Plaintiff $170,000 as a partial buy-out.  (Id.)  Plaintiff eventually became suspicious of A. Huff and began to investigate the business dealings of MMM.  She was able to obtain a copy of the MMM books in 2008 and discovered what she believed to be "accounting discrepancies that could not be reconciled."  (Id. at ¶ 39.)  Plaintiff filed suit against A. Huff and many other parties in April 2011.

## II. DISCUSSION

### A. Brian Sly

Defendant Sly has challenged Plaintiff's Complaint on a number of grounds.  Defendant Sly has moved for dismissal under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, under Fed. R. Civ. P. 9(b) for failure to plead fraud with particularity, and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### i. Lack of Personal Jurisdiction

The Supreme Court has held that personal jurisdiction "is an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (quoting Emp'rs Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937); see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception.") (internal quotation marks omitted).  Furthermore, if a court "can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground."  Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp., 549 U.S. 422, 436 (2007).  Accordingly, the Court will address its jurisdiction over the defendant before addressing the merits of Plaintiff's individual claims.

When addressing a motion to dismiss for lack of personal jurisdiction, "there is no statutory direction . . ., [therefore,] the mode of its determination is left to the trial court." Gibbs v. Buck, 307 U.S. 66, 71-72 (1939).  However,

case law establishes a settled procedural scheme to guide trial courts in the exercise of this discretion. If it decides that the motion can be ruled on before trial, the court

> "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). However the court handles the motion, the plaintiff always bears the burden of establishing that jurisdiction exists.

Serras v. First Tennessee Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). If the court determines the jurisdictional issue on written submissions only, the plaintiff "need only make a prima facie showing of jurisdiction." Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). When making such a determination without an evidentiary hearing, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff." Id. Furthermore, the court must "not consider facts proffered by the defendant that conflict with those offered by the plaintiff." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002).

In a diversity case, a federal court determines whether personal jurisdiction exists over a non-resident defendant by applying the law of the state in which it sits. Third Nat'l Bank v. WEDGE Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989). The Court applies a two-step inquiry to determine whether it may exercise personal jurisdiction over a non-resident defendant: "(1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." Brunner v. Hampson, 441 F.3d 457, 463 (6th Cir. 2006). The district court's exercise of jurisdiction over an out-of-state defendant must be consistent with both the forum state's long-arm statute and the constitutional requirements of due process. Id.; CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 2007); Appriss Inc. v. Information Strategies, Inc., 2011 WL 3585890, at *2 (W.D. Ky. Aug. 16, 2011). Furthermore, "[p]ersonal jurisdiction must be established with respect to each cause of action." Morris Aviation, LLC v. Diamond Aircraft Indus., Inc., 730 F. Supp. 2d 683, 694 (W.D. Ky. 2010).

Until recently, the Kentucky long-arm statute, K.R.S. § 454.210, had been interpreted "to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants." Wilson v. Case, 85 S.W.3d 589, 592 (Ky. 2002). In Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51 (Ky. 2011), the Kentucky Supreme Court expressly overruled Wilson and held that the Kentucky long-arm statute does not extend to the full limit of due process and requires its own separate analysis. Caesars, 336 S.W.3d at 57.

Kentucky's long-arm statute requires a two-prong showing before a court can exercise personal jurisdiction over a non-resident. First, the court must find that a non-resident's conduct or activities fall within one of nine enumerated provisions in K.R.S. § 454.210. Only three of those provisions are applicable to the facts underlying the present motion against Defendant Sly; K.R.S. § 454.210(2)(a)(1), (3), and (4).[1] If this first prong is satisfied then the second prong requires the

---

[1] The long-arm statute states in pertinent part that

(2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

    1. Transacting any business in this Commonwealth;
    . . .
    3. Causing tortious injury by an act or omission in this Commonwealth;
    4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth[.]

K.R.S. § 454.210(2)(a).

Court to determine if the plaintiff's claim arises from the defendant's actions.  See K.R.S. § 454.210(2)(b) ("When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.")  Accordingly, "even when the defendant's conduct and activities fall within one of the enumerated categories, the plaintiff's claim still must 'arise' from that conduct or activity before long-arm jurisdiction exists." Caesars, 336 S.W.3d at 56.  The court in Caesars conceded that "[t]he phrase 'arising from' may reasonably be subject to various interpretations.  Id. at 58.  In evaluating the meaning of that phrase, the Kentucky Supreme Court found that "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction, then jurisdiction is properly exercised."  Id. at 59.  The court went on to say that "the analysis must necessarily be undertaken on a case by case basis" and that "[t]rial courts will ultimately have to depend upon a common sense analysis, giving the benefit of the doubt in favor of jurisdiction."  Id.

In the instant case, Plaintiff has alleged two claims against Defendant Sly, breach of fiduciary duty and unjust enrichment.  The following factual allegations related to Defendant Sly are contained within the Amended Complaint: (1) Defendant Brian Sly is a citizen of the State of California, (Amend. Compl. ¶ 11); (2) Defendant Sly loaned approximately $3.9 million dollars to A. Huff, however, he was re-paid $5.3 million with funds from MMM, (Id. at ¶ 43); and (3) Plaintiff relied on representations of Sly that the company was being operated lawfully (Id. at ¶ 46).   In support of Count III, Breach of Fiduciary Duty, Plaintiff alleges that she reposed trust and confidence in Sly who therefore had a duty of utmost good faith, trust, confidence and candor to the Plaintiff, and that Sly breached that duty and caused damage to the Plaintiff.  (Id. at ¶ 62-62.)  In support of Count VI, Unjust Enrichment, Plaintiff alleges that Sly received benefits from the

Plaintiff's participation in MMM for which the Plaintiff has not been adequately compensated, which benefits were to the detriment of Plaintiff.  (Id. at ¶¶ 75-76.)

Both Plaintiff and Defendant Sly have submitted two declarations, sworn to under penalty of perjury, in an attempt to demonstrate or dispel the notion that the Court has personal jurisdiction over Defendant Sly.  While the Federal Rules of Civil Procedure specifically address the use of affidavits and declarations to support or oppose a motion for summary judgment, the Rules are silent regarding their use to support or oppose a motion to dismiss under Rule 12(b).  Compare Fed. R. Civ. P. 56(c), with Fed. R. Civ. P. 12(b).  "Because there are no specific procedures or rules governing evidentiary rulings in connection with a motion to dismiss, courts consistently look to Rule 56 for guidance."  Foshee v. Forethought Fed. Sav. Bank, 2010 WL 2158454, at *3 (W.D. Tenn. May 7, 2010); see also Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 327 (6th Cir. 1990) (finding that "[a]lthough the district court has considerable discretion in devising procedures for resolving questions going to subject matter jurisdiction, courts frequently look to Rule 56 for guidance in ruling upon evidentiary matters under 12(b)(1).").

Under Rule 56(c), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c).  The Court sees no reason why an affidavit or declaration submitted in connection with a motion to dismiss under Rule 12(b)(2) should be treated any differently.  Therefore, to the extent any affidavit or declaration submitted by the parties is not based upon personal knowledge or contains inadmissible evidence, the Court will not consider such portions in determining the issue of personal jurisdiction. See United Tech. Corp. v. Mazer, 556 F.3d 1260, 1277 (11th Cir. 2009) (finding that when a court

is determining a Rule (12)(b)(2) motion to dismiss that it should "consider[] 'only those portions of the [affidavit] that set forth specific factual declarations within the affiant's personal knowledge.'"); Cooper v. McDermott Int'l, Inc., 62 F.3d 395, at *5 (5th Cir. 1995) (unpublished) (holding that "[h]earsay is not properly included in an affidavit" submitted with a Rule 12(b)(2) motion.).

In support of his motion to dismiss, Defendant Sly has submitted two sworn declarations wherein he states that he is a resident of California who has never lived, owned real property, owned any other assets or personal property, maintained any bank or other accounts, maintained any regular business activities, paid taxes, or maintained any employees, contractors or agents in the Commonwealth of Kentucky. (Sly's Decl. in Support of Mot. to Dismiss ¶¶ 2-3 [DN 10].) Defendant Sly further maintains that he never spoke to Plaintiff regarding business while either of them were in Kentucky, rather, all of his contacts with Plaintiff in Kentucky were of a social nature. (Id. at ¶¶ 4-7.)

Sly does admit that he was in Kentucky to attend a regular business meeting involving Oxygen Unlimited II, LLC in May 2006, but that Plaintiff was not at that business meeting. (Id. at ¶ 5.) Sly further declares that he did, in fact, loan MMM approximately $3,924,808.00 in 2001, an action that he considered and executed from his California home. (Sly's Supp. Decl. ¶ 2 [DN 39].) Sly states that he has only received $2,708,029.03 as a return on his loan, and that he has lost approximately $1,216,779, which he does not expect to recover. (Id. at ¶¶ 4-5.) The payments that he did receive from MMM were all received by Sly at his home in California and deposited in his California bank accounts by him. (Id. at ¶ 4.) The last of these repayments was received in 2005. (Id.) Defendant Sly further states that he does not recall ever speaking with Plaintiff regarding MMM, until approximately 2009 when Plaintiff threatened to sue him. (Id. at ¶ 3.)

8

Plaintiff also filed two declarations opposing Defendant Sly's motion to dismiss.  Plaintiff's declarations are prefaced with the statement that "[t]he following facts are within my own personal knowledge, and if called upon I could and would testify competently to these facts, except as to those matters stated herein upon information and belief, and as to those matter [sic] I have a good faith and reasonable basis to believe that they are true."  (Pl.'s Decl. in Supp. Pl.'s Resp. to Def. Brian Sly's Mot. to Dismiss ¶ 2 [DN 23].)  Plaintiff states that she was a partial owner of MMM beginning from its inception in 2001, and that she owned a significant portion of the company during the time relevant to her Complaint.  (Id. at ¶ 5.)  The remaining statements contained in her declaration are not made from personal knowledge but are made based on Plaintiff's "knowledge and belief."  (Id. at ¶¶ 6-13.)  Plaintiff states that it is her "knowledge and belief" that Defendant Sly has had "systematic and continuous" contacts with the state of Kentucky since 1990, (Id. at ¶ 6), including being a business affiliate of A. Huff since the early 1990's, (Id. at ¶ 8).  Plaintiff also states that is her "knowledge and belief" that Defendant Sly invested at least $4,000,000 in MMM between 2001 and the present.  (Id. at ¶ 10.)

In her Supplemental Declaration filed approximately six weeks after her initial declaration, Plaintiff again makes a number of statements based upon her "knowledge and belief."  (See Pl.'s Decl. in Supp. Pl.'s Supp. Resp. to Def. Brian Sly's Mot. to Dismiss [DN 37].)  In this second declaration, Plaintiff states that it is her "knowledge and belief" that Defendant Sly held and sold an "equity position" in MMM, back to MMM for over $ 15 million dollars in 2002.  (Id. at ¶ 13.)  Using the same "knowledge and belief" preface, Plaintiff further states that Defendant Sly was part of a large fraudulent scheme that included soliciting investments for MMM and Oxygen Unlimited, LLC, and agreeing to make large transfers of funds for "investment" purposes in these entities,

9

which never resulted in business uses.  (See id. at ¶¶ 9-15.)  Plaintiff claims that Defendant A. Huff purposely acted to perpetrate fraud against MMM by engaging in circular accounting practices, that benefitted  Defendant Sly, and that Defendant Sly was aware of such fraudulent practices.  (Id. at ¶¶ 16-17, 22.)

These "factual allegations" made by Plaintiff do not appear to be based upon personal knowledge, rather, they appear to be based upon conjecture, speculation, and belief.  Although Plaintiff intentionally prefaced the majority of her statements with the phrase "knowledge and belief" instead of "information and belief," the use of such wording is insufficient to satisfy the requirement of personal knowledge.  These statements made upon "knowledge and belief" stand in stark contrast to the other statements made by Plaintiff based upon personal knowledge, which do not contain such a preface.  (See e.g. id. at 6.)  Statements not made upon personal knowledge are not to be considered by courts in determining a motion for summary judgement under Rule 56 and such statements should not be considered in a motion to dismiss under Rule 12(b)(2).  See Totman v. Louisville Jefferson Cnty. Metro Gov't, 391 F. App'x 454, 464 (6th Cir. 2010) (finding that statements made to the best of a party's knowledge and belief go beyond personal knowledge and do not meet the evidentiary standard set forth in Rule 56); Plaskolite, Inc. v. Zhejiang Taizhou Eagle Mach. Co., Ltd., 2008 WL 5190049, at *5 (S.D. Ohio Dec. 9, 2008) (addressing a Rule 12(b)(2) motion to dismiss and refusing to consider portions of an affidavit based upon the belief of the affiant); Doe I v. Al Maktoum, 2008 WL 4965169, at *5 (E.D. Ky. Nov. 18, 2008) (finding an affidavit based upon news stories and websites was not based upon personal knowledge and was insufficient to defeat a motion to dismiss under Rule 12(b)(2); Neewra, Inc. v. Manakh Al Khaleeg Gen. Trading and Contracting Co., 2004 WL 1620874, at *2 n.3 (S.D.N.Y. July 20, 2004) (finding

an affidavit based upon information and belief was not based upon personal knowledge and was not to be considered in the determination of the Rule 12(b)(2) motion to dismiss).

Disregarding those "factual assertions" made upon Plaintiff's knowledge and belief, the Court finds that there are few facts connecting Defendant Sly to the Commonwealth of Kentucky for purposes of Plaintiff's claims of breach of fiduciary duty and unjust enrichment. While the Court must draw all reasonable inferences in favor of Plaintiff, it need not disregard statements and facts made by the Defendant that are not contradicted. Plaintiff's claim for breach of fiduciary duty is premised upon Defendant Sly allegedly misrepresenting to her the legality of MMM's operation. Plaintiff has produced no evidence demonstrating when, where or how this misrepresentation was made. She has failed to produce evidence that it was made while either she or Defendant Sly was in the Commonwealth of Kentucky. Defendant Sly has submitted a declaration stating that he has never spoken to Plaintiff over the phone when either he or she was in the Commonwealth of Kentucky. (Def. Sly's Decl. ¶ 7.) He further states that the one time that he interacted with Plaintiff in Kentucky was in May 2006 when he saw her at a social function following a business meeting involving Oxygen Unlimited II, LLC. (Id. at ¶ 5.) Defendant Sly states that this contact with Plaintiff was purely a social one.[2]

Looking first to Plaintiff's breach of fiduciary duty claim, the Court can quickly eliminate K.R.S. § 454.210(2)(a)(3) and (4) as creating jurisdiction. Plaintiff has failed to demonstrate that the misrepresentation occurred in the Commonwealth, therefore jurisdiction cannot be found under subsection (2)(a)(3). As for subsection 2(a)(4), assuming that the misrepresentation in some way

---

[2] Noticeably, Defendant Sly does not go so far in his declaration as to state that he has never discussed MMM with Plaintiff, only that such communication never took place while either of them was in the Commonwealth of Kentucky.

11

affected Plaintiff in Kentucky, the Court finds that Plaintiff has failed to demonstrate that Defendant Sly "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth[.]" K.R.S. § 454.210(2)(a)(4). Furthermore, Plaintiff has not demonstrated that Defendant Sly's alleged misrepresentation arose "out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth." Id. Therefore, jurisdiction cannot be found under subsection (2)(a)(4).

Nor does K.R.S. § 454.210(2)(a)(1), transacting any business in the Commonwealth, provide the Court with the necessary jurisdiction. As the Kentucky Supreme Court only recently stated that Kentucky's long-arm statute must be analyzed separately from due process, there is little precedent by Kentucky courts analyzing the phrase "transacting any business" in K.R.S. § 454.210(2)(a)(1). Under Kentucky law, statutes are to be "liberally construed with a view to promote their objects and carry out the intent of the legislature . . . ." K.R.S. § 446.080(1). Furthermore, "words and phrases are to 'be construed according to the common and approved usage of language' unless a word has a certain technical meaning." Workforce Dev. Cabinet v. Gaines, 276 S.W.3d 789, 792 (Ky. 2008) (quoting K.R.S. § 446.080(4)).

The term "transact" is defined as "to carry on or conduct (business, negotiations, activities, etc.) to a conclusion or settlement." Random House Unabridged Dictionary 2008 (2d ed. 1993). In the instant case, the Amended Complaint alleges that Defendant Sly made a loan to A. Huff. (Amend. Compl. ¶ 43.) Defendant Sly's Supplemental Declaration states that the loan was actually issued to MMM, a Kentucky corporate entity. (Def. Sly's Supp. Discl. ¶ 2.) Regardless of who initially received the funds, A. Huff or MMM, it is clear from the declarations that the money was

intended to be a loan to MMM. Defendant Sly's declaration states that this decision and the actual transfer of funds took place from his home in California. Regardless of where the loan was considered or executed, Defendant Sly placed $3.9 million dollars into Kentucky corporation. The Court is satisfied that the loan at issue constitutes transacting business in the Commonwealth.

However, it is not enough that a defendant transact business in the Commonwealth, a plaintiff must also demonstrate that her claim arises from such a transaction. See K.R.S. § 454.210(2)(b); Caesars, 336 S.W.3d at 56. Plaintiff has not done so in the instant case. There are no factual allegations that support an inference that Defendant Sly's alleged breach of a fiduciary duty is connected to his transacting business by issuing MMM a loan. The Court is unable to find a reasonable nexus between Defendant Sly's loan and the Plaintiff's claim. A fiduciary duty is not imposed upon a lender by the simple act of making a loan. Furthermore, there are no facts alleged that suggest that the misrepresentation that MMM was being operated lawfully is connected whatsoever to Defendant Sly's loan. Without facts demonstrating how her claim for breach of a fiduciary duty arises from Defendant Sly's making of a loan, the Court finds that personal jurisdiction over this claim cannot be exercised under K.R.S. § 454.210(2)(a)(1). Accordingly, the Court finds that Plaintiff has failed to demonstrate a prima facie case of personal jurisdiction over Defendant Sly for the breach of fiduciary duty claim.

Defendant Sly also challenges the Court's personal jurisdiction regarding Plaintiff's unjust enrichment claim. The Amended Complaint states that Defendant Sly made a loan of approximately $3.9 million dollars to Defendant A. Huff, but was repaid $5.3 million dollars from MMM. (Amend. Compl. ¶ 43.) Thirty-two paragraphs later, the Complaint states in conclusory terms that the "Defendants [including Sly] received benefits from the Plaintiff's participation in 'MMM' for which

the Plaintiff has not been adequately compensated." (Id. at ¶ 75.)

Plaintiff contends that the Court has jurisdiction over Defendant Sly for purposes of the unjust enrichment claim under the transacting business provision in K.R.S. § 454.210(2)(a)(1). As discussed above, Defendant Sly's loan to a Kentucky company through A. Huff, is sufficient at this prima facie stage to constitute transacting business in the Commonwealth. However, there still must be a reasonable and direct nexus between the claim that Defendant Sly was unjustly enriched and his loan to MMM. The Kentucky Supreme Court has found that the determination of this prong "will ultimately depend upon a common sense analysis, giving the benefit of the doubt in favor of jurisdiction." Caesars, 336 S.W.3d at 59. With these instructions in mind, the Court finds that there is a sufficient nexus for the Court to exercise personal jurisdiction under the Kentucky long-arm statute. While the Amended Complaint is rather bare, it appears that the unjust enrichment claim is directly related to the business Sly transacted in Kentucky. The Court finds that this demonstrates enough of a nexus between Plaintiff's claim of unjust enrichment and Defendant Sly's loan to exercise personal jurisdiction.

Having found that the Kentucky long-arm statute applies, the Court must also find that the exercise of personal jurisdiction conforms with due process. "The relevant inquiry is whether the facts of the case demonstrate that the nonresident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" Theunissen, 935 F.2d 1454, 1459 (6th Cir. 1991) (quoting Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945)). The Sixth Circuit has identified three criteria for determining whether specific in personam jurisdiction may be exercised.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action

14

must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).  See also Theunissen, 930 F.2d at 1460; Franklin Roofing, Inc. v. Eagle Roofing and Sheet Metal, Inc., 61 S.W. 3d 239, 240 (Ky. Ct. App. 2001).

In order to determine whether personal jurisdiction over Defendant Sly would be appropriate in this forum, the Court must examine his contacts in terms of the three criteria outlined in Mohasco.  "The three prong test is intended to be a framework for analysis and is not susceptible to mechanical application."  Info-Med, Inc. v. Nat'l Healthcare, Inc., 669 F.Supp. 793, 796 (citing Welsh v. Gibbs, 631 F.2d 436, 440 (6th Cir. 1980)).  "Furthermore, the first and second prongs may be considered as one due to their inter-relatedness."  Id.  These prongs may be satisfied if a substantial business contract is present.  Id.

Jurisdiction is proper under the purposeful availment requirement where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).  Moreover, the defendant's conduct and connection with the forum must be of a character that he or she should reasonably anticipate being haled into court there.  Id. at 474.  This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts.  Id. at 475.

"A defendant may be said to have purposefully availed himself of the benefits of the forum state if he has either 'deliberately' engaged in significant activities within a state or created 'continuing obligations' between himself and the citizens of a forum."  Info-Med, 669 F. Supp. at

15

796 (quoting <u>Burger King</u>, 471 U.S. at 475-76).  "[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."  <u>LAK, Inc. v. Deer Creek Enters.</u>, 885 F.2d 1293, 1300 (6th Cir. 1989) (quoting <u>Burger King</u>, 471 U.S. at 473).  "[J]urisdiction may not be avoided merely because the defendant did not physically enter the forum state, so long as a commercial actor's efforts are purposefully directed toward residents of another state." <u>Info-Med</u>, 669 F. Supp. at 796.

The first prong of the <u>Mohasco</u> test requires the Court to determine if Defendant Sly purposely availed himself of the privilege of acting within Kentucky.  Taking all reasonable inferences in favor of Plaintiff, the Court finds that Defendant Sly reached out beyond the state of California and loaned $3.9 million dollars to a Kentucky company.  This action created continuing obligations between himself and a Kentucky citizen.  This was not a "random," "fortuitous," or "attenuated" contact, but was instead a purposefully direct and deliberate action on Defendant Sly's part.  As such, Sly should have reasonably anticipated being haled into a Kentucky court in a matter related to that loan.  <u>See</u> <u>McGee v. Int'l Life Ins. Co.</u>, 355 U.S. 220, 223 (1957) (finding the issuance of a single life insurance policy to by a non-resident was sufficient purposeful availment).  As discussed above, the Court has already found that Plaintiff's claim for unjust enrichment arises from this contact, thus satisfying the second prong of the <u>Mohasco</u> test.  As for the final prong, the Court finds that infusing nearly $4 million dollars into the state of Kentucky demonstrates sufficient effects within Kentucky to make the exercise of personal jurisdiction over Defendant Sly reasonable.

The Court notes that its finding of personal jurisdiction is based only on Plaintiff's ability to demonstrate a prima facie case.  The finding of personal jurisdiction at this stage of the litigation

does not preclude Defendant Sly from raising the defense again at trial.  See Serras v. First Tenn. Bank Nat'l Assoc., 875 F.2d 1212, 1214-15 (6th Cir. 1989) ("A threshold determination that personal jurisdiction exists 'does not relieve [the plaintiff] . . . at the trial of the case-in-chief from proving the facts upon which jurisdiction is based by a preponderance of the evidence.'")

**ii. Failure to State a Claim**

Having found that it has personal jurisdiction over Defendant Sly for purposes of the unjust enrichment claim, the Court will now address the merits of Plaintiff's claim.  Defendant Sly contends that Plaintiff has failed to state a claim upon which relief can be granted, and has moved to dismiss this claim under Fed. R. Civ. P. 12(b)(6).

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief[,]" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).  Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.  A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct."  Id. at 1949, 1950.  Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'"  Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

17

While the Court considered evidence outside of the pleadings, in the form of declarations, for purposes of Defendant Sly's Fed. R. Civ. P. 12(b)(2) challenge, such consideration was limited to that analysis, and does not convert this motion to dismiss into one for summary judgment.  See Wilson-Cook Med., Inc. v. Wilson, 942 F.2d 247, 251-52 (4th Cir. 1991) (finding that trial court's consideration of affidavits for purposes of 12(b)(2) motion did not convert a 12(b)(6) motion into one for summary judgment); Kerns v. Caterpillar, Inc., 583 F. Supp. 2d 885, 891 n.1 (M.D. Tenn. 2008) (finding the consideration of external evidence in support of a 12(b)(2) motion does not require conversion to summary judgment).  The Court will not consider such evidence for purposes of this analysis, but will instead look solely to the pleadings.  See Kerns, 583 F. Supp. 2d at 891, 895 (considering pleadings and affidavits for purposes of 12(b)(2) motion, but only considering pleadings for purposes of 12(b)(6) motion).

Defendant Sly contends that Plaintiff has failed to allege sufficient facts to establish a claim for unjust enrichment under Kentucky law.  For a plaintiff to succeed on her unjust enrichment claim she must prove three elements: "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value."  Guerin v. Fulkerson, ---S.W.3d---, 2011 WL 4633090, at *3 (Ky. Ct. App. Oct. 7, 2011).

In application, Kentucky courts have consistently found that the first element not only requires a benefit be conferred upon the defendant, but also that the plaintiff be the party conferring that benefit.  See Jones v. Sparks, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009) (affirming trial court's dismissal of unjust enrichment claim because the court found that plaintiff did not confer a benefit upon the defendant or his property); JP White, LLC v. Poe Co., LLC, 2011 WL 1706751, at *5 (Ky.

18

Ct. App. May 6, 2011) (affirming directed verdict because plaintiff failed to demonstrate that it conferred a benefit on defendant); Mattingly v. Primerica Life Ins. Co., 2007 WL 2792197, at *7 (W.D. Ky. Sept. 21, 2007) (stating that the first element of an unjust enrichment claim requires "a benefit conferred on the defendant *by the plaintiff*." (emphasis added)); see also 66 Am. Jur. 2d Restitution and Implied Contracts § 12 (2011) (Under the section titled "requirement of benefit at the expense of another," stating that "[a]n essential element in recovering under a theory of unjust enrichment is the receipt of a benefit by the defendant *from the plaintiff* that would be inequitable to retain without paying for its value." (emphasis added)) .

In Dixie Fuel Company v. Straight Creek, LLC, 2011 WL 845828 (E.D. Ky. Mar. 8, 2011), the court conducted a detailed analysis of the first element in an unjust enrichment claim under Kentucky law.  The court found that "[a]lthough not always expressly stated by courts, the requirement that the benefit be conferred on the defendant *by the claimant* seems to always be a requirement in practice."  Id. at *4.  The court cited Jones v. Sparks and several other state and federal cases that analyzed the first prong as requiring that the plaintiff be the party who conferred the benefit.  See id. (collecting cases).  The Dixie Fuel court found that the term "confer" means "to bestow from or as if from a position of superiority or to give[,]" and that the plaintiff had not bestowed or given anything to the defendant.  Id. at *5 (internal quotation marks omitted). Therefore, the court in Dixie Fuel dismissed the plaintiff's claim.  Having reviewed those cases and sources, the Court agrees with the analysis in Dixie Fuel and finds that under Kentucky law, a claim for unjust enrichment requires that a plaintiff prove that she conferred a benefit upon the defendant.

In the instant case, the Court finds that Plaintiff has failed to allege sufficient facts to demonstrate that she is entitled to relief for a claim of unjust enrichment against Defendant Sly.  The

factual allegations established in the Amended Complaint are as follows: (1) Plaintiff held at least a 49% interest in MMM from its formation in July 2001 to 2006, when she was partially bought out, (Amend. Compl. ¶¶ 22, 35); and (2) that Defendant Sly loaned $3.9 million dollars to A. Huff and was repaid $5.3 million dollars from MMM funds, (Id. at ¶ 43).   Plaintiff then groups nine defendants together under Count VI, Unjust Enrichment, and states the following "the Defendants received benefits from the Plaintiff's participation in 'MMM' for which the Plaintiff has not been adequately compensated" and "the Defendants benefitted from Plaintiff's involvement in 'MMM', to the detriment of the Plaintiff."  (Id. at ¶¶ 75-76.)

These factual allegations taken together fall far short of demonstrating that Plaintiff is entitled to relief for unjust enrichment from Defendant Sly.  Formulaic recitation of the elements is not sufficient to state a claim, however, Plaintiff's pleadings fail to even properly state the necessary elements.  Furthermore, there are insufficient facts demonstrating that Defendant Sly was conferred a benefit at the expense of Plaintiff, let alone that Plaintiff was the party who conferred that benefit. Plaintiff claims that Defendant Sly was repaid $5.3 million dollars in exchange for a loan made in the amount of $3.9 million dollars.  There are no facts indicating when the loan was made, when it was repaid, or what the terms of the loan were that made repayment of $5.3 million dollars unjust. Nor has Plaintiff pled facts indicating whether or how she was entitled to any of the funds that were repaid.  These pleadings fail to demonstrate, in any meaningful way, that Defendant Sly was unjustly enriched by a benefit conferred by the Plaintiff.  Accordingly, the Court finds that Plaintiff's claim for unjust enrichment fails to state a claim upon which relief can be granted.  Therefore, the Court **GRANTS** Defendant Sly's Motion to Dismiss.

20

**B. Thomas Bean**

Plaintiff has alleged one claim of unjust enrichment against Defendant Bean.  Defendant Bean has moved for dismissal of that claim under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, under Fed. R. Civ. P. 9(b) for failure to plead fraud with particularity, and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**i. Personal Jurisdiction**

Because the Court is making the determination of personal jurisdiction on written submissions alone, Plaintiff's burden for demonstrating personal jurisdiction is only a prima facie showing.  Compuserve, 89 F.3d at 1262.  Plaintiff contends that Defendant Bean's actions in creating and managing two corporate entities in Kentucky sufficiently demonstrate that Defendant Bean transacted business in Kentucky, as required by K.R.S. § 454.210(2)(a)(1).  In support of her argument, Plaintiff has submitted a declaration.  However, much like the declaration submitted against Defendant Sly, Plaintiff's declaration against Defendant Bean consists mostly of statements made upon "knowledge and belief."  As the Court has ruled above, such statements do not meet the threshold requirements of personal knowledge to be considered by the Court.  See supra Part III.A.i; Totman v. Louisville Jefferson Cnty. Metro Gov't, 391 F. App'x 454, 464 (6th Cir. 2010). Defendant Bean, in his Reply, discusses and references his own sworn declaration.  However, the Court is unable to find any such declaration attached to the filing or in the Record.

Therefore, the only information that the Court can use to analyze this issue are the pleadings within the Amended Complaint and the few statements contained in Plaintiff's sworn declaration that are made with sufficient personal knowledge.  Considering that evidence and taking all inferences in favor of Plaintiff the Court finds that it does not have personal jurisdiction over

21

Defendant Bean for purposes of Plaintiff's unjust enrichment claim.  Plaintiff has alleged that Defendant Bean helped establish and manage two Kentucky corporate entities that operated in Kentucky.  Assuming without deciding that this limited allegation is sufficient to demonstrate transacting business, the Court finds that Plaintiff has failed to demonstrate that there is a reasonable and direct nexus between this activity and her unjust enrichment claim.

The allegations found in the Amended Complaint against Defendant Bean are (1) that he acted with Defendant A. Huff to establish and manage River Falls Investment, LLC and River Falls Equities, LLC, (Amend. Compl. ¶ 44); (2) that  Defendant Bean received benefits from the Plaintiff's participation in MMM for which the Plaintiff has not been adequately compensated (Id. at ¶ 75); and (3) that Defendant Bean benefitted from Plaintiff's involvement in MMM, to the detriment of Plaintiff, (Id. at ¶ 76).  As for Plaintiff's declaration, the Court finds that the only allegation of any importance that is based upon sufficient personal knowledge is that Plaintiff owned a 50% interest in MMM during the times relevant to the Complaint.  (See Plaintiff's Decl. Against Def. Bean ¶ 5 [DN 38].)

Those factual allegations are insufficient to demonstrate a reasonable nexus between a claim for unjust enrichment and Defendant Bean's status as a manager of two Kentucky corporate entities. Plaintiff argues that these companies were used to funnel money from MMM to Defendant Bean's personal use, however, such allegations are nowhere within the Amended Complaint.  The Amended Complaint states that SDH Realty, Inc., and W.A. Huff, LLC were used to funnel money from MMM.  (See Amend. Compl. ¶¶ 41-42.)  Neither of those entities are or were ever named River

22

Falls Investments, LLC or River Falls Equities, LLC.[3]  Nor is Defendant Bean alleged to have been involved with those two entities.  Quite simply, there are no allegations based upon personal knowledge contained either within the Amended Complaint or Plaintiff's sworn declaration that link Defendant Bean's management of River Falls Investments, LLC or River Falls Equities, LLC to Plaintiff's claim for unjust enrichment.  The bare assertions that Plaintiff attempts to link together are insufficient to demonstrate that the Court has personal jurisdiction over Defendant Bean.

### ii. Failure to State a Claim

Notwithstanding the Court's lack of personal jurisdiction, the Court finds that the bare assertions contained within the Amended Complaint fail to state a claim upon which relief may be granted.  As discussed above, a claim for unjust enrichment requires a plaintiff to demonstrate a "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value."  Guerin v. Fulkerson, ---S.W.3d---, 2011 WL 4633090, at *3 (Ky. Ct. App. Oct. 7, 2011).

The factual allegations alleged against Defendant Bean are that he acted with Defendant A. Huff to establish and manage River Falls Investment, LLC and River Falls Equities, LLC and that he received benefits from Plaintiff's participation in MMM.  These allegations do not demonstrate sufficient facts upon which the Court could find that Plaintiff is entitled to relief for unjust enrichment.  Plaintiff's memorandum opposing Defendant Bean's motion attempts to lump Defendant Bean's actions together with allegations against Defendant A. Huff, and to then cite the

---

[3] Plaintiff's Amended Complaint states that River Falls Equities, LLC was at one time titled W. Anthony Huff, LLC. (Amend. Compl. ¶ 32.)  However, Plaintiff alleges that money was funneled through W.A. Huff, LLC, not through W. Anthony Huff, LLC.  (See Amend. Compl. ¶ 42.)  These are two separate entities.

23

portions of the Amended Complaint that speak of "Defendants" actions in a general manner. However, the Court is not persuaded by Plaintiff's attempt to piggy-back claims using Defendant A. Huff, or to use generalities to imply that every Defendant engaged in a specific action. Therefore, the Court finds that the Amended Complaint fails to state a claim upon which relief can be granted. Accordingly, the Court **GRANTS** Defendant Bean's Motion to Dismiss.

**C. Huff Farm (Horsebranch) Inc.**

Defendant Huff Farm has moved to dismiss Plaintiff's claims of fraud and unjust enrichment. Defendant Huff Farm contends that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted. Plaintiff's Amended Complaint contains the following allegations against Defendant Huff Farm: (1) Defendant Huff Farm made representations of material fact to Plaintiff with the knowledge that they were false and the intent that Plaintiff would rely upon them, which the Plaintiff reasonably did, (Amend. Compl. ¶ 65); and (2) Defendant Huff Farm received benefits from the Plaintiff's participation in MMM for which the Plaintiff was not adequately compensated, which was to Plaintiff's detriment, (Id. at ¶¶ 75-76).

There are no factual allegations that describe Defendant Huff Farm's involvement in either of these claims. Rather Defendant Huff Farm is included in general recitations of claims against multiple defendants. As discussed above, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. Plaintiff's Amended Complaint is woefully inadequate regarding allegations against

24

Defendant Huff Farm and her claims cannot survive a motion to dismiss.

In her Response to Defendant Huff Farm's motion, as well as the other Defendants' motions, Plaintiff argues that the lack of factual content supporting her claims should not be fatal to her Amended Complaint because her claims fall within the exclusive control doctrine.  In support of her argument, Plaintiff cites this Court's opinion in Union Underwear Company, Inc v. Wilson, 2005 WL 3307098 (W.D. Ky. Dec. 1, 2005).  In Union Underwear, the Court found that

> [A]n exception to the particularity requirement of Fed. R. Civ. P. 9(b) exists when the relevant facts "lie exclusively within the knowledge and control of the opposing party."  United States ex rel. Wilkins v. State of Ohio, 885 F. Supp. 1055, 1061 (S.D. Ohio 1995).  In such a case, pleading upon information and belief is permissible, although the plaintiff must still plead a statement of facts upon which the belief is based.  Craighead v. E.F. Hutton & Co., 899 F.2d 485, 489 (6th Cir. 1990).  A court should hesitate to dismiss an action when the facts underlying the claim are within the defendant's control, especially when no discovery has been conducted.  Michaels Bldg. Co., 848 F.2d at 680.

Id. at *4 (quoting Beard v. Worldwide Mortg. Corp., 354 F. Supp. 2d 789, 799 (W.D. Tenn. 2005).[4] In discussing the exclusive control exception to Fed. R. Civ. P. 9(b), the Sixth Circuit stated that it is "reluctant to amputate [a] plaintiff['s] claim as long as there is a reasonable basis upon which to make out a cause of action from the events narrated in the complaint."  Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 680 (6th Cir. 1988).

In the instant case, the Court finds that the exclusive control exception does not apply.  This exception is intended to save a claim from dismissal under the heightened pleading standard of Rule 9(b).  However, as discussed above, Plaintiff's fraud claim against Defendant Huff Farm does not even meet the initial pleading threshold of Rule 8(a).  Plaintiff's claim of fraud against Defendant

---

[4] It should be noted that this Court in Union Underwear found the exclusive control exception did not apply.

Huff Farm does not make out a cause of action, it simply uses generalities and a formulaic recitation of elements. There is no reasonable basis upon which to make out a cause of action from anything articulated in the Amended Complaint. There are no events narrated in the Amended Complaint that indicate that there is a reasonable claim against Defendant Huff Farm. Furthermore, the Court finds that Plaintiff has failed to demonstrate that the information necessary to cure her claims is in the exclusive control of the Defendants.

The exclusive control exception was intended to save those claims that appear to have a reasonable basis, but lack the necessary factual support required by Rule 9(b). Plaintiff's fraud claim against Defendant Huff Farm is not such a claim. Therefore, the Court finds that the exclusive control exception does not apply in this case.

Considering the total lack of factual allegations against Defendant Huff Farm contained within the Amended Complaint and the bare formulaic assertion of the elements constituting her causes of action, the Court finds that Plaintiff's claims for fraud and unjust enrichment against Defendant Huff Farms fail to state claims upon which relief can be granted. Therefore, the Court **GRANTS** Defendant Huff Farm's Motion to Dismiss.

### D. Leave to Amend

In each of her responsive motions, Plaintiff requests that in lieu of the dismissal of her claims against Defendants Sly, Bean, and Huff Farm, that she be granted leave to amend her complaint. Under Fed. R. Civ. P. 15(a)(1)(B), a plaintiff may amend her pleading once as a matter of course within 21 days after service of a motion under Rule 12(b). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a district court may

deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

In the instant case, the Court notes that Defendant Sly's Motion to Dismiss, based upon Rule 12(b) was filed on June 7, 2011. On June 24, 2011, Plaintiff Amended her Complaint as a matter of course, as permitted under Rule 15(a). However, rather than address the severe deficiencies in her Complaint, which were identified in Defendant Sly's motion to dismiss, Plaintiff made only minor changes in correctly identifying Defendant Huff Farm, LLC's principal place of business. Notwithstanding, the Court finds that justice requires that Plaintiff be granted leave to amend her Amended Complaint one more time. As Plaintiff failed to tender a Second Amended Complaint to the Court in conjunction with her request, the Court orders her to submit a Second Amended Complaint **NO LATER THAN 20 DAYS** from the entry of this order.

### E. Motion for More Definite Statement

Defendants A. Huff, S. Huff, Michele Brown, Anthony Russo, River Falls Investments, LLC, Oxygen Unlimited, LLC, River Falls Equities, LLC, SDH Realty, Inc., W.A. Huff, LLC, and The Huff Grandchildren Trust have moved under Fed. R. Civ. P. 12(e) for a more definite statement. These Defendants contend that the Amended Complaint fails to comply with the pleading standards of Fed. R. Civ. P. 8(a), and that clarification is required so that they may assert good faith responses and mandatory affirmative defenses.

Rule 12(e) states that a motion for more definite statement is proper only if "a pleading to which a responsive pleading is allowed [] is so vague or ambiguous that the party cannot reasonably

prepare a response." F.R.C.P. 12(e).  A motion for a more definite statement must state the defects in the pleading and the details desired.  Id.  A party, however, may not use a Rule 12(e) motion as a substitute for discovery.  Mitchell v. E-Z Way Towers, Inc., 269 F.2d 126, 132 (5th Cir. 1959).  Given the liberal pleading standard set forth in Rule 8, Rule 12(e) motions are disfavored.  See id.  At the same time, the Supreme Court has noted that "if a pleading fails to specify the allegations in a manner that provides sufficient notice," then a Rule 12(e) motion may be appropriate.  Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 514 (2002).

The Court finds that the Amended Complaint is too vague on all counts for the Defendants to properly form a responsive pleading.  The Defendants have identified the many defects contained within the Amended Complaint and the details desired so that they may formulate a worthwhile response.  Therefore, the Court grants the Defendants' motion and orders Plaintiff to address the issues identified by these Defendants in her Second Amended Complaint, which is to be filed no later than 20 days from entry of this order.

**F. Motion to Strike**

Plaintiff has moved to strike the Defendants Reply to Plaintiff's Response to Defendants' Motion for More Definite Statement. Fed. R. Civ. P. 12(f) provides that upon a motion made by a party, "[t]he court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "Because striking a portion of a pleading is a drastic remedy, such motions are generally viewed with disfavor and are rarely granted."  Watkins & Son Pet Supplies v. Iams Co., 107 F. Supp. 2d 883, 887 (S.D. Ohio 1999).  "The application of this rule, which is in the discretion of the trial judge, should be resorted to only where the pleading contains such allegations that are obviously false and clearly injurious to a party to the action because of the

kind of language used or that the allegations are unmistakably unrelated to the subject matter."

Pessin v. Keeneland Ass'n, 45 F.R.D. 10, 13 (E.D. Ky.1968).

Plaintiff contends that substantial portions of the Reply contain improper introduction of new arguments, evidence and issues by the Defendants and that the information is irrelevant and prejudicial. Defendants contend that the portions of the Reply identified by Plaintiff are relevant to rebut Plaintiff's argument that the exclusive control doctrine applies to this case and that Plaintiff has failed to demonstrate any prejudice. The Court agrees with Defendants that the information is relevant and that there is an insufficient showing of prejudice to strike the Reply. Therefore, Plaintiff's Motion to Strike is **DENIED**.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Brian N. Sly's Motion to Dismiss [DN 10] is **GRANTED**, without prejudice.

**IT IS FURTHER ORDERED** that Defendants A. Huff, S. Huff, Michele Brown, Anthony Russo, River Falls Investments, LLC, Oxygen Unlimited, LLC, River Falls Equities, LLC, SDH Realty, Inc., W.A. Huff, LLC, and The Huff Grandchildren Trust's Motion for More Definite Statement [DN 12] is **GRANTED**.

**FURTHER** that Defendant Thomas Bean's Motion to Dismiss [DN 30] is **GRANTED**, without prejudice.

**FURTHER** that Defendant Huff Farm (Horsebranch) Inc.'s Motion to Dismiss [DN 34] is **GRANTED**, without prejudice.

**FURTHER** that Plaintiff Roxann Pixler's Motion to Strike [DN 33] is **DENIED**.

**FURTHER** that Plaintiff Roxann Pixler's Motion for Extension of Time [DN 36] is

**GRANTED**.

**FURTHER** that Plaintiff file her Second Amended Complaint **NO LATER THAN 20 DAYS** from the entry of this Order.

cc: counsel of record