### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

CIVIL ACTION NO. 3:11-CV-00207-JHM

ROXANN PIXLER                                          PLAINTIFF

V.

ANTHONY HUFF, et. al.                                  DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Anthony Huff, Sheri Huff, Michele Brown, Anthony Russo, River Falls Investments, LLC, Oxygen Unlimited, LLC, River Falls Equities, LLC, SDH Realty, Inc., W.A. Huff, LLC, The Huff Grandchildren Trust, and Huff Farm (Horsebranch) Inc.'s (collectively "the Huff Defendants") Motion to Dismiss [DN 59], and Defendant Brian N. Sly's Motion to Dismiss [DN 60]. Fully briefed, these matters are ripe for decision.

### I. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief[,]" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. A complaint falls short if it pleads facts "merely consistent with

a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 1949, 1950.  Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'"  Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## II. BACKGROUND

This case centers around the creation and operation of Midwest Merger Management, LLC ("MMM").  In 2001, Plaintiff Roxann Pixler's husband, Danny Pixler, and Anthony Huff ("A. Huff") formed MMM.  Pixler and A. Huff placed their shares in the company in their respective wives' names, making Plaintiff and Sheri Huff ("S. Huff") the only members of the LLC, with each holding a 50% interest.  On July 20, 2001, MMM filed its Articles of Organization, which listed two members, Plaintiff and S. Huff.  Simultaneously, Plaintiff executed a Management Agreement, naming Pixler and A. Huff the managers of MMM.  Throughout the time that Plaintiff maintained an interest in MMM, it appears that the company was run entirely by Pixler and A. Huff, and that Plaintiff had no involvement with the operations of the company.  In its 2002 annual report filed with the Kentucky Secretary of State, MMM listed an additional member and/or manager, Michele Brown.  In 2006, Anthony Russo became a manager of MMM, and at some point, Brian Sly also served as either a manager and/or employee of MMM.

MMM was established as a "risk manager."  In this line of work, MMM would collect premiums and fees from clients and would in turn pay premiums to insurance carriers that provided workers' compensation insurance coverage.  In 2001, MMM acquired Certified Services, Inc., which itself acquired several subsidiaries.  A. Huff and Pixler ran all of these companies, along with several other Kentucky LLCs, using the same working capital and regularly commingling funds.  These entities were used to funnel money from MMM for the personal benefit of A. Huff, S. Huff, Pixler,

2

Brown, Russo, Sly and others.  This was done without Plaintiff's knowledge or consent.

On May 12, 2005, the scheme began to unravel as Certified filed for Chapter 11 bankruptcy. In 2006, Pixler and A. Huff told Plaintiff that MMM had no value, but that A. Huff would still buy-out Plaintiff's share in the company.  Plaintiff then accepted $170,000 from A. Huff for her interest in MMM.  At this point, and potentially even earlier, MMM, Certified, Huff, and many of the other individual Defendants were engulfed in litigation.  See, e.g., S.E.C. v. Huff, 758 F. Supp. 2d 1288 (S.D. Fl. 2010).  In 2007, after she had sold her interest, Plaintiff requested a copy of MMM's financial records from Brown, but was told that they were currently unavailable because they were being audited.  In 2008, Plaintiff obtained a copy of MMM's financials and discovered a litany of accounting discrepancies demonstrating how the Defendants had used MMM to misappropriate its assets for their own personal gain.  While many of the Defendants had received assets, funds or benefits from MMM, Plaintiff only received one distribution from the LLC, for approximately $60,000 in 2004.  This distribution was used entirely to pay the tax liability associated with MMM.

Notwithstanding the fact that Plaintiff was a member of MMM in name only, contributed no capital or service to the LLC to obtain her interest, and was eventually paid $170,000 for that interest, Plaintiff now contends that the Defendants defrauded her out of her contractual right to share in the profits and financial gain of MMM.[1]  In an effort to rectify this alleged wrong, Plaintiff

---

[1] The Court notes that in separate litigation, where Plaintiff was a relief defendant, the Securities Exchange Commission requested that Plaintiff be disgorged of any illegally obtained profits received from MMM.  The Southern District of Florida found that because Roxann Pixler only received one $60,000 distribution from MMM and she "paid the money she received from Midwest to the federal government in taxes without enjoying a corresponding income or other benefit from Midwest, the Court concludes that disgorgement is not appropriate."  Huff, 758 F. Supp. 2d at 1362.  To the extent Plaintiff now claims that she was entitled to additional distributions, the Court is unsure that she would be entitled to keep any award representing lost profits or distributions from MMM.  However, as this is only a motion to dismiss, the Court

filed her original Complaint alleging seven claims against fourteen defendants.  (See Compl. [DN 1].)  Following the filing of Defendant Sly's first motion to dismiss, Plaintiff amended her Complaint as a matter of course under Rule 15(a)(1)(B).  (See First Am. Compl. [DN 28].) Thereafter, the Court issued a Memorandum, Opinion and Order dated November 17, 2011 [DN 50]. In that Opinion, the Court dismissed, without prejudice, all claims against Defendants Sly, Thomas Bean, and Huff Farm (Horsebranch) Inc.; granted the Huff Defendants' motion for a more definite statement; and granted Plaintiff leave to amend, once more, to cure the defects in her pleadings.  On December 17, 2011, Plaintiff filed her Second Amended Complaint.  (See Sec. Am. Compl. [DN 52].)  The Second Amended Complaint not only attempts to salvage the claims contained in the First Amended Complaint, but it also names twenty-one (21) new defendants and alleges four new claims. Defendant Sly and the Huff Defendants have now moved to dismiss the claims against them contained in Plaintiff's Second Amended Complaint.

## III. DISCUSSION

### A. Standing

The Huff Defendants first challenge Plaintiff's standing to bring all ten claims asserted in the Second Amended Complaint in her individual capacity.  The Huff Defendants contend that nine of Plaintiff's ten claims are derivative claims that must be brought on behalf of MMM so that *all* MMM creditors and stakeholders may benefit from any recovery.  In support of this theory, the Huff Defendants contend that the Court should apply the general rule regarding Kentucky corporations that a shareholder may only bring a direct or individual suit where he can show a violation of a duty owed directly to him.  See Watkins v. Stock Yards Bank & Trust Co., ---S.W.3d---, 2012 WL

reserves this issue for another day.

4

2470692, at *5 (Ky. Ct. App. June 29, 2012).  Plaintiff contends that the Huff Defendants have used the wrong standard because members of an LLC are more like partners in a partnership than shareholders in a corporation.  However, Plaintiff does not proffer a different or alternative test to determine standing in the LLC context.

Neither the Court's research nor the parties' briefs have uncovered Kentucky case law addressing the determination of whether an action is direct or derivative in an LLC context.  Since the Kentucky Supreme Court has not addressed the issue, this Court must predict how the Kentucky Supreme Court would resolve it.  Stanek v. Greco, 323 F.3d 476, 478 (6th Cir. 2003).  As limited liability corporations are relatively recent creatures of statute in the state of Kentucky, there is little case law addressing their governance.  Patmon v. Hobbs, 280 S.W.3d 589, 593 (Ky. Ct. App. 2009).  When faced with establishing matters of first impression regarding LLCs, the court in Patmon noted that "[a] limited liability company is a hybrid business entity having attributes of both a corporation and a partnership."  Id.  The court then applied both partnership and corporation principles, specifically adopting the use of the corporate opportunity doctrine, to determine whether members in an LLC owe fiduciary duties to the LLC and each other.  See id. at 595–96.  Accordingly, the Court finds that given LLCs' hybrid nature, it may be appropriate to apply the law of corporations or partnerships in determining whether an action is direct or derivative.

In the context of corporations, the general rule is "'that a shareholder of a corporation does not have a personal or individual right of action for damages based solely on an injury to the corporation.'"  Watkins, ---S.W.3d---, 2012 WL 2470692, at *5 (quoting 2815 Grand Realty Corp. v. Goose Creek Energy, Inc., 656 F. Supp. 2d 707, 716 (E.D. Ky. 2009)).

> "There is, however, a well-recognized exception to this rule . . . .  "[W]here the shareholder suffers an injury separate and distinct from that suffered by other

> shareholders," or the corporation as an entity, the shareholder may maintain an individual action in his own right. A depreciation or diminution in the value of a shareholder's corporate stock is generally not recognized, however, as the type of direct, personal injury which is necessary to sustain a direct cause of action. The reasoning behind this rule is that a diminution in the value of corporate stock resulting from some depletion of or injury to corporate assets is a direct injury only to the corporation; it is merely an indirect or incidental injury to an individual shareholder."

Id. (quoting Goose Creek, 656 F. Supp. 2d at 715–16) (citations omitted).  While derivative actions are also available in the partnership context, see K.R.S. § 362.511, there is an absence of case law addressing when a partner may bring a direct suit or when he must bring a derivative suit.  As the only articulable test for this determination is the one used in the corporations context, the Court finds that Kentucky courts are likely to apply the test outlined in Watkins to claims made in the LLC context.

Therefore, Plaintiff may maintain her claims against the Defendants only where she has suffered an injury that is separate and distinct from that which would be suffered by other members or the LLC as an entity.  The Court finds that Plaintiff's claims of fraud (Count I), breach of fiduciary duty (Count VI), breach of contract (Count VII), and promissory estoppel (Count IX) each allege an injury by Plaintiff that is separate and distinct from any injury suffered by MMM or the other members.  Thus, these claims are direct claims that may be brought by Plaintiff in her individual capacity.

However, Plaintiff's claims of fraudulent conveyance (Count II), civil conspiracy (Count III), conversion (Count IV), negligence (Count V), constructive trust (Count VIII), and gross negligence (Count X) are derivative and may only be brought by MMM or on MMM's behalf.  The crux of these six claims is that MMM's assets and funds were misappropriated by the various Defendants, depriving Plaintiff of her contractual percentage of MMM's business profits.  These claims are

actually asserting an injury to MMM, the diminution/theft/misappropriation of its assets, which in turn resulted in an injury to Plaintiff, the deprivation of Plaintiff's contractual share of the profits from MMM.  In this chain, Plaintiff's injury is only an incidental one that runs from her status as a member of the LLC, not from the Defendants' tortious actions against her individually.  Moreover, these injuries would be felt by all members of the LLC, not just Plaintiff.  The claim that Plaintiff was damaged by the misappropriation of MMM's assets is similar to the "diminution in the value of corporate stock resulting from some depletion of or injury to corporate assets[,]" which Kentucky courts have found does not permit a direct cause of action.   Accordingly, under the test articulated in Watkins, the Court finds that these claims are derivative.

The Huff Defendants contend that these derivative claims must be dismissed because they do not satisfy the pleading requirements of Fed. R. Civ. P. 23.1.  Under Rule 23.1, when "one or more . . . members of a corporation or an unincorporated association bring a derivative action[,]" the plaintiff must allege that she fairly and adequately represents the interests of similarly situated members of the association.  Furthermore,

> The complaint must be verified and must:
> (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
> (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and
> (3) state with particularity:
> > (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
> > (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b).  Plaintiff's Second Amended Complaint fails Rule 23.1 on several grounds, including the fact that it is not verified.  The Court also has concerns regarding whether Plaintiff was

a member of MMM at the time of each transaction about which she complains.[2]  As Plaintiff's
fraudulent conveyance, civil conspiracy, conversion, negligence, constructive trust, and gross
negligence claims are derivative, belonging to MMM, Plaintiff lacks standing to assert them in her
individual capacity.  Moreover, Plaintiff has failed to plead these derivative claims in accordance
with Rule 23.1.  Therefore, the Court finds that they must be dismissed.

**B. Statute of Limitations**

The Huff Defendants and Defendant Sly each contend that Plaintiff's Second Amended
Complaint should be dismissed for the failure to plead facts avoiding a time bar.  The Sixth Circuit
has found that "[s]ince Rule 9(f) makes allegations of time material, . . . the defense of the statute
[of limitations] may be raised on a motion to dismiss under Rule 12(b)(6) when it is apparent from
the face of the complaint that the time limit for bringing the claim has passed." Hoover v. Langston
Equip. Assocs., Inc., 958 F.2d 742, 744 (6th Cir. 1992) (quoting 5 Wright and Miller, Federal
Practice and Procedure, § 1357, pp. 350–54 (West 1990)).  Defendants argue that Plaintiff was
"bought out" in 2006, thus her claims accrued no later than 2006.  They further argue that because
she filed this action in 2011, many of her claims appear to be time barred.

Plaintiff contends that she has pled sufficient facts to demonstrate "fraudulent concealment,"
which tolls the statute of limitations.  "The Sixth Circuit has adopted the view, at least in cases
where the face of the complaint discloses a failure to file within the time allowed, that the plaintiff
may come forward with allegations explaining why the statute of limitations should be tolled." Id.
at 744.  One manner in which a plaintiff may do so, is by asserting "fraudulent concealment."  This

---

[2] These concerns are based on the fact that Plaintiff has based her claims on actions that
occurred in 2007 and 2008, (see id. at ¶¶ 67-71), but she has admitted that she sold her interest in
MMM in 2006, (Sec. Am. Compl. ¶ 64).

requires the plaintiff to plead three elements: "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." Dayco Corp. v. Goodyear Tire and Rubber Co., 523 F.2d 389, 394 (6th Cir. 1975).  Plaintiff asserts that she has pled these necessary elements by pleading that the Defendants concealed their actions through deception and lies, that she tried to retrieve MMM's accounting books but was denied access to the books, and that she finally received a copy of MMM's books in 2008.  Thus, Plaintiff argues that her cause of action did not accrue until 2008 when she was able to investigate MMM's books and discover the massive fraud perpetrated by Defendants.

Defendants counter by claiming that Plaintiff was deposed regarding fraudulent activities involving MMM as early as 2004, and should have been on notice at that time to investigate any potential claims she might possess regarding the operation of MMM.  While this may ultimately prove to be true, at this stage of the proceeding, the Court is bound to accept each of Plaintiff's well-pled factual allegations as true.  Accordingly, the Court finds that Plaintiff has pled sufficient facts to demonstrate fraudulent concealment, which tolled the running of the statute of limitations on each of her claims until approximately 2008.  As the remaining four claims are subject to at least a five year limitations period, the Court finds that the Plaintiff's Second Amended Complaint has pled sufficient facts to avoid a time bar at this stage of the proceedings.

## C. Brian Sly

Defendant Sly has challenged Plaintiff's Complaint on a number of grounds.  Defendant Sly has moved for dismissal under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, under Fed. R. Civ. P. 9(b) for failure to plead fraud with particularity, and under Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief can be granted.  Of Plaintiff's four remaining claims, only two of them have been alleged against Defendant Sly, fraud (Count I) and breach of fiduciary duty (Count VI).  Therefore, the Court will only address Defendant Sly's arguments as to those claims.

**1. Lack of Personal Jurisdiction**

In a diversity case, a federal court determines whether personal jurisdiction exists over a non-resident defendant by applying the law of the state in which it sits.  Third Nat'l Bank v. WEDGE Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989).  The Court applies a two-step inquiry to determine whether it may exercise personal jurisdiction over a non-resident defendant: "(1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause."  Brunner v. Hampson, 441 F.3d 457, 463 (6th Cir. 2006).

If the court determines the jurisdictional issue on written submissions only, the plaintiff "need only make a prima facie showing of jurisdiction."  Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th  Cir. 1996).  When making such a determination without an evidentiary hearing, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff."  Id.  Furthermore, the court must "not consider facts proffered by the defendant that conflict with those offered by the plaintiff."  Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002).

Looking first to Kentucky's long-arm statute, the Kentucky Supreme Court has found the statute requires a two-prong showing before a court can exercise personal jurisdiction over a non-resident.  Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011).  First, the court must find that a non-resident's conduct or activities fall within one of nine enumerated provisions

in K.R.S. § 454.210.  Only three of those provisions are applicable to the facts underlying the present motion against Defendant Sly; K.R.S. § 454.210(2)(a)(1), (3), and (4).[3]  If this first prong is satisfied then the second prong requires the Court to determine if the plaintiff's claim arises from the defendant's actions.  See K.R.S. § 454.210(2)(b) ("When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.")  Accordingly, "even when the defendant's conduct and activities fall within one of the enumerated categories, the plaintiff's claim still must 'arise' from that conduct or activity before long-arm jurisdiction exists."  Caesars, 336 S.W.3d at 56.  This requires that there be "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction[.]"  Id. at 59.  This analysis should be undertaken on a case by case basis, "giving the benefit of the doubt in favor of jurisdiction."  Id.

---

[3] The long-arm statute states in pertinent part that

(2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

> 1. Transacting any business in this Commonwealth;
> . . .
> 3. Causing tortious injury by an act or omission in this Commonwealth;
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth[.]

K.R.S. § 454.210(2)(a).

11

Plaintiff contends that she has alleged sufficient facts to demonstrate that Defendant Sly transacted business in Kentucky under K.R.S. § 454.210(2)(a)(1).  Considering the pleadings in the light most favorable to Plaintiff, the Court agrees.  Plaintiff has alleged that Defendant Sly loaned MMM approximately $3.9 million dollars and that he owned and sold an equity interest in MMM to A. Huff for approximately $15 million dollars.  The Court finds that these actions demonstrate that Defendant Sly transacted business in the Commonwealth, and that there is "a reasonable and direct nexus" between these transactions, including the ownership and sale of an equity interest in MMM, and Plaintiff's claims of fraud and breach of fiduciary duty.

Furthermore, the exercise of personal jurisdiction over Defendant Sly conforms with due process.  "The relevant inquiry is whether the facts of the case demonstrate that the nonresident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" Theunissen, 935 F.2d 1454, 1459 (6th Cir. 1991) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  The Sixth Circuit has identified three criteria for determining whether specific in personam jurisdiction may be exercised.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).

Taking all reasonable inferences in favor of Plaintiff, the pleadings sufficiently allege that Defendant Sly purposefully availed himself of the privilege of acting in the Commonwealth by not only loaning MMM $3.9 million dollars, but also by purchasing an equity interest in MMM and then

selling it for approximately $15 million dollars.  These are not random, fortuitous or attenuated contacts, but are instead purposefully direct and deliberate actions on behalf of Defendant Sly that created continuing obligations between himself and the Commonwealth.  The Court has already found that the Plaintiff's claims "arise" from these actions, thus satisfying the second <u>Mohasco</u> prong.  As for the final prong, the Court finds that infusing nearly $4 million dollars into the Commonwealth through a loan, and maintaining and selling an equity interest in a Kentucky LLC demonstrate sufficient effects within Kentucky to make the exercise of personal jurisdiction over Defendant Sly reasonable.  The Court again notes that this determination at the motion to dismiss stage does not preclude Defendant Sly from raising the defense again after discovery.  <u>See</u> <u>Serras v. First Tenn. Bank Nat'l Assoc.</u>, 875 F.2d 1212, 1214–15 (6th Cir. 1989).

## 2. Failure to State a Claim of Fraud

Having found that it has personal jurisdiction over Defendant Sly, the Court will now address the merits of Plaintiff's fraud and breach of fiduciary duty claims.  Under Kentucky law, a plaintiff must allege the following six elements to plead a viable claim of fraud: "a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury."  <u>United Parcel Serv. Co. v. Rickert</u>, 996 S.W.2d 464, 468 (Ky. 1999).  The Federal Rules of Civil Procedure require that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The Sixth Circuit has made clear that under Rule 9(b), a "Plaintiff['s] complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  <u>Frank v. Dana Corp.</u>, 547 F.3d 564, 570 (6th Cir. 2008) (quoting <u>Gupta v. Terra Nitrogen Corp.</u>, 10 F. Supp.

13

2d 879, 883 (N.D. Ohio 1998)). "At a minimum, [a] Plaintiff[ ] must allege the time, place and contents of the misrepresentations upon which [she] relied." Id. (citing Bender v. Southland Corp., 749 F.2d 1205, 1216 (6th Cir. 1984)).

Plaintiff contends that she is entitled to plead her fraud claim under a relaxed Rule 9(b) standard because she has pled her claim with sufficient specificity to place Defendants on notice as to the nature of the claim. The Court disagrees. The manner in which the Second Amended Complaint has been drafted does not adequately place the Defendants on notice of the nature of the claim against each of them, but instead relies upon generalities in an effort to include as many Defendants as possible in each claim. Plaintiff also argues that given the number of corporate defendants involved in the fraudulent scheme that she "cannot be required to recite each fact of fraud in minute detail." The Court again disagrees. The number of corporate defendants involved in this lawsuit is a product of Plaintiff's decision to name an additional twenty-one corporate defendants after she was granted leave to amend her complaint a second time. Plaintiff should not escape her pleading requirements because she has chosen to name numerous corporate entities as defendants. Furthermore, while such an argument may be applicable to the fraud claims against the corporate defendants, there is no reason that Plaintiff cannot satisfy the Rule 9(b) pleading standard for the claims against the individual Defendants. Accordingly, the Court will apply the pleading standard outlined above in Frank v. Dana Corp.

Looking to the allegations contained within the Second Amended Complaint, the Court finds that Plaintiff's fraud claim against Defendant Sly fails to state a claim upon which relief can be granted. To the extent that Plaintiff's claim is based upon Defendant Sly's alleged representation that MMM was being operated lawfully, (Sec. Amend. Compl. ¶ 63), Plaintiff has failed to identify

14

the time, place, or manner of this representation.  Thus, it does not satisfy Rule 9(b).

Plaintiff next contends that she has pled a sufficient fraud claim by alleging that Defendant Sly, through his agent A. Huff, represented that the transfers of assets out of MMM were for valid business purposes.  This allegation also suffers from Plaintiff's failure to identify the time, place and content of A. Huff's representations.  More importantly, the Second Amended Complaint does not plead sufficient facts to demonstrate the existence of a valid agency relationship.  While the Court is bound to accept all well-pled *factual* allegations, the existence of an agency relationship is a legal determination that is not entitled to the same presumption.  See Papasan v. Allain, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.").  When attempting to plead liability through agency, "a claimant must plead facts that would support a finding that the alleged agents had actual or apparent authority to act on behalf of another." In re Commercial Money Ctr., Inc., 2005 WL 2233233, at *19 (N.D. Ohio Aug. 19, 2005) (internal quotation marks omitted).  Plaintiff has failed to plead sufficient facts to demonstrate the existence of an agency relationship between Defendant Sly and A. Huff.  Accordingly, Plaintiff has failed to demonstrate that this alleged material misrepresentation is attributable to Defendant Sly.

Lastly, Plaintiff argues that she has alleged a viable fraud claim on account of Defendant's agents material misrepresentations in the financial records of MMM.  This claim suffers from the same defect regarding insufficient pleading of an agency relationship.  Moreover, Plaintiff has admitted that her interest in MMM was bought out in 2006, (Sec. Amend. Compl. ¶¶ 64-65), and that she was first able to review MMM's financial records in 2008, (id. at ¶ 71).  These facts, as pled, indicate that Plaintiff could not have relied on the misrepresentations in the financial records

to her detriment, as she no longer had an interest in MMM at the time these misrepresentations were relayed to her.  Therefore, the Court finds that Plaintiff has failed to produce facts upon which her claim for fraud against Defendant Sly can be granted.  Accordingly, Defendant Sly's motion to dismiss Plaintiff's fraud claim is **GRANTED**.

### 3. Failure to State a Claim for Breach of Fiduciary Duty

Defendant Sly next contends that Plaintiff's breach of fiduciary duty claim should be dismissed.  A breach of fiduciary duty claims requires that a plaintiff allege that (1) the defendant owes a fiduciary duty to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a result of that breach.  Fastenal Co. v. Crawford, 609 F. Supp. 2d 650, 665 (E.D. Ky. 2009).  In the Court's November 17, 2011 Memorandum, Opinion, and Order, the Court found that Plaintiff had failed to establish that Defendant Sly owed a fiduciary duty to Plaintiff, where the First Amended Complaint only contained allegations that Defendant Sly was a lender to MMM.   Plaintiff was granted leave to amend, and in her Second Amended Complaint she has alleged that not only was Defendant Sly a lender to MMM, but that he was also a manager and/or employee of MMM.[4]  And, as such, that he "owed a fiduciary duty to MMM and Plaintiff."  (See Sec. Am. Compl. ¶ 150–51.)

---

[4] Defendant Sly cries foul at this sudden "factual" addition.  However, the Court is bound to accept all well-pled factual allegations as true at this stage of the litigation.  Notwithstanding, the Court reminds all parties that "there must be a *reasonable* basis for a plaintiff's complaint. Attorneys who take advantage of the liberal pleading provisions of Rule 8 by commencing a lawsuit in a desperate attempt to unearth a cause of action through discovery must be checked by the ethics provisions of Fed. R. Civ. P. 11[.]" Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 680 (6th Cir. 1988) (emphasis in original).  The Sixth Circuit's warning in Michaels is equally applicable to the instant case: "after discovery has been launched, if plaintiffs are still unable to plead a sufficient factual basis for the allegations made against defendants, the spectre of Rule 11 sanctions should guide the actions of plaintiffs' counsel."  Id. at 681.

Defendant Sly argues that this claim should be dismissed because it fails to establish that he owed a fiduciary duty to Plaintiff.  The Kentucky Court of Appeals has found that "Kentucky limited liability companies, being similar to Kentucky partnerships and corporations, impose a common-law fiduciary duty on their *officers and members* in the absence of contrary provisions in the limited liability company operating agreement."  Patmon v. Hobbs, 280 S.W.3d 589, 594 (Ky. Ct. App. 2009) (emphasis added). Plaintiff has alleged that Defendant Sly was a manager of MMM, which is sufficient for her claim to survive this motion to dismiss.[5]  Therefore, Defendant Sly's motion to dismiss the breach of fiduciary duty claim is **DENIED**.

## B. The Huff Defendants

The Huff Defendants have moved to dismiss each of Plaintiff's claims.  As the Court has found that Plaintiff only has standing to assert her fraud, breach of fiduciary duty, breach of contract, and promissory estoppel claims, the Court will only address the Huff Defendants' arguments as to those claims.

### 1. Failure to State a Claim of Fraud

The Huff Defendants have identified six misrepresentations in Plaintiff's Second Amended Complaint.  First, Plaintiff alleges that "[d]uring the course of the Plaintiff's part-ownership of MMM, she relied on the representations of . . . A. Huff, Brown, [and] Russo, . . . that the company

---

[5] Although a fiduciary duty exists between an employee and his employer, see Fastenal Co. v. Crawford, 609 F. Supp. 2d 650, 665 (E.D. Ky. 2009) (citing Henkin, Inc. v. Berea Bank & Trust Co., 566 S.W.2d 420, 423 (Ky. Ct. App. 1978)), it is unclear if an employee owes a fiduciary duty to the shareholders or members of his employer-company.  If, as the Court suspects, an employee's fiduciary duty is to the employer itself, and not the individual shareholders or members, then any breach of fiduciary duty claim against Defendant Sly as an employee of MMM would belong to MMM and not Plaintiff.  However, the Court need not reach this issue in the present context, because Plaintiff has alleged that Defendant Sly was a manager of MMM.

was being operated lawfully."  In her response, Plaintiff contends that this representation satisfies Rule 9(b) because it was made "as part of the Operating Agreement and the Management Agreement[,]" (Pl.'s Resp. to Huff Defs.' Mot. to Dismiss 9), thus demonstrating the time, place, and manner of the misrepresentation.  The Court finds that this is sufficient to allege a claim of fraud against Defendants A. Huff, S. Huff, and Brown.  (See Sec. Am. Compl. ¶¶ 39–40, 156.)  However, Russo is not alleged to have been a party to these agreements executed on July 20, 2001. (See id.) Therefore, this allegation cannot support a claim of fraud against Defendant Russo.

Plaintiff also alleges that Defendants A. Huff, S. Huff, Brown and Russo represented, through the Operating Agreement, Management Agreement and yearly tax information, that the company would be operated lawfully, that Plaintiff would share in any profits, and that MMM assets would not be misappropriated.  (See id. at ¶ 114.)  This allegation is similar to the one previously discussed, therefore, the Court will only address the addition of representations made in the yearly tax documents.  Plaintiff has failed to allege how these misrepresentations were contained in the yearly tax documents, which Defendants made them in what years, or that these representations were made with the intent to induce Plaintiff to rely upon them.  Accordingly, the Court finds that this allegation fails to plead a claim of fraud.

Plaintiff next alleges that in 2006 Defendant A. Huff misrepresented the value of MMM, and then bought out her interest for less than its actual value.  (See id. at ¶¶ 64, 116.)  The Court finds that this is sufficient to allege a claim of fraud against Defendant A. Huff.

Plaintiff alleges that Defendants A. Huff, Brown, and Russo misrepresented several transactions involving MMM assets by retroactively changing MMM's financial records.  (See id. at ¶108.)  However, Plaintiff has admitted that her interest in MMM was bought out in 2006, (id. at

18

¶¶ 64-65), and that she was first able to review MMM's financial records in 2008, (id. at ¶ 71). These facts, as pled, indicate that Plaintiff could not have relied on the misrepresentations in the financial records to her detriment, as she no longer had an interest in MMM at the time these misrepresentations were relayed to her.

Plaintiff alleges that all Defendants, through their agent, A. Huff, represented that the transfers of MMM assets to numerous other entities and individuals were for valid business purposes.  (See id. at 119.) This allegation fails to identify the time, place and content of A. Huff's representations and, therefore, does not meet Rule 9(b)'s specificity requirement.  Moreover, as discussed above, the Second Amended Complaint does not plead sufficient facts to demonstrate the existence of a valid agency relationship between A. Huff and any other Defendant.  See supra Part II.C.2.i.  Accordingly, the Court finds that this allegation cannot support a claim of fraud.

Lastly, Plaintiff alleges that all Defendants either directly misrepresented these transfers or willfully concealed material facts regarding the transfers that they were under a duty to disclose to Plaintiff.  Plaintiff's claim that all Defendants directly misrepresented the transfers to Plaintiff is not supported by sufficient facts to plead a claim for relief.  This statement fails to identify which Defendant made a representation, the content of the representation, that the Defendant knew it to be false, or that it was made with inducement to be acted upon by Plaintiff.  This statement further fails Rule 9(b)'s specificity requirement.  To the extent that Plaintiff has alleged fraud by omission, she is still under an obligation to "specify 'the who, what, when where, and how' of the alleged omission." Republic Bank & Trust Co. v. Bear Stearns & Co., Inc., 683 F.3d 239, 255–56 (6th Cir. 2012).  This allegation fails to even approach such a standard of pleading.  Accordingly, the Court finds that this allegation cannot support a claim of fraud.

19

**2. Failure to State a Claim for Breach of Fiduciary Duty**

The Huff Defendants contend that Plaintiff's breach of fiduciary duty claim against A. Huff, S. Huff, Brown and Russo is subject to the heightened pleading of Rule 9(b) and should be dismissed for its failure to satisfy that standard.  The Huff Defendants cite <u>Steelvest Inc. v. Scansteel Service Center, Inc.</u> for the proposition that a breach of fiduciary duty is "equivalent to fraud."  <u>See Steelvest</u>, 807 S.W.2d 476, 487 (Ky. 1991).  However, several courts have found that this statement is limited by the facts of <u>Steelvest</u> to cases involving attorney-client privilege.  <u>See</u> <u>Bariteau v. PNC Fin. Servs. Grp., Inc.</u>, 285 F. App'x 218, 223–24 (6th Cir. 2008); <u>Anderson v. Old Nat. Bancorp.</u>, 675 F. Supp. 2d 701, 712–13 (W.D. Ky. 2009); <u>Gundaker/Jordan Am. Holdings, Inc. v. Clark</u>, 2009 WL 2390162, at *7 (E.D. Ky. Aug. 4, 2009).  The Court agrees and finds that <u>Steelvest</u> is limited to its facts, and does not apply to the determination of the pleading standard in the present case.

Under a breach of fiduciary duty claim, a plaintiff is required to allege that (1) the defendant owes a fiduciary duty to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a result of that breach.  <u>Fastenal</u>, 609 F. Supp. 2d at 665.  Plaintiff has alleged that S. Huff and Brown owed her a duty as members of MMM, (<u>see</u> Sec. Am. Compl. ¶ 42), and that A. Huff and Russo owed her a duty as managers of MMM, (<u>see</u> <u>id.</u> at ¶¶ 41, 74); that these Defendants violated that duty by failing to disclose critical information regarding the improper transfer of MMM's assets, (<u>see</u> <u>id.</u> at ¶¶ 121, 152); and that she was damaged by this failure to disclose, (<u>see</u> <u>id.</u> at ¶ 153).  In Kentucky, managers and members of an LLC owe a fiduciary duty to one another.  <u>See</u> <u>Patmon v. Hobbs</u>, 280 S.W.3d at 594–95.  Thus, Plaintiff has sufficiently pled a claim for breach of fiduciary duty, and the Huff Defendants' motion to dismiss this claim is **DENIED**.

**3. Failure to State a Claim of Breach of Contract**

The Huff Defendants next seek to dismiss Plaintiff's breach of contract claim premised on Defendants' violations of the Operating and Management Agreements.  The Huff Defendants contend K.R.S. § 275.165 vests power to manage an LLC in a manager, which voids any management agreements, precluding a breach of contract.  Contrary to the Huff Defendants' interpretation of K.R.S. § 275.165, the Court finds nothing in the statutory text that precludes members of an LLC from executing a management agreement.  In fact, as Plaintiff notes, the default management of an LLC actually falls to the members, see K.R.S. § 275.165(1), who are free "to delegate by an agreement to other persons" their "powers to manage or control the business affairs of the limited liability company[.]" K.R.S. § 275.165(3).

The Huff Defendants next argue that Plaintiff has failed to allege that she was damaged. Plaintiff has clearly alleged damages from the breach of the operating agreement including that she was disenfranchised and squeezed out of the business.  The Court finds that Defendants' argument on this issue is without merit.

Lastly, the Huff Defendants contend that there are insufficient facts to allege that Defendant Russo was a party to either the Operating Agreement or the Management Agreement.  The court agrees.  Plaintiff has alleged that an operating agreement was executed on July 20, 2001 between A. Huff, S. Huff, Pixler, Brown and Plaintiff, (see Sec. Am. Compl. ¶ 156), and a management agreement was executed at the same time between A. Huff, Pixler and Plaintiff, (see id. at ¶ 157). Plaintiff has failed to allege that Defendant Russo was a party to either of these agreements. Therefore, the Huff Defendants' motion to dismiss the breach of contract claim is **GRANTED IN PART** and **DENIED IN PART**.  It is **GRANTED** as to Defendant Russo, and **DENIED** in all other

21

respects.

**4. Failure to State a Claim of Promissory Estoppel**

Under the doctrine of equitable estoppel, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Meade Constr. Co. v. Mansfield Commercial Elec., Inc., 579 S.W.2d 105, 106 (Ky. 1979) (quoting Restatement (Second) of Contracts § 90 (1965)).  In Kentucky, a claim of promissory estoppel requires "'(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise.'"  Abney v. Amgen, Inc., 443 F.3d 540, 549 (6th Cir. 2006) (quoting Bergman v. Baptist Healthcare Sys., Inc., 344 F. Supp. 2d 998, 1003 (W.D. Ky. 2004)).

Plaintiff has alleged that Defendant A. Huff made the promise to operate MMM lawfully for the benefit of its members (which included Plaintiff), that Plaintiff would share in any profits and financial gain pursuant to her membership interest, and that the assets of MMM would not be misappropriated.  (See Sec. Am. Compl. ¶ 170.)  Plaintiff further alleges that she reasonably relied on these statements, (see id. at ¶ 172), and acquiesced in permitting Defendant A. Huff to control MMM and accepted less value from MMM and Defendant than she was entitled to receive, (id.). Essentially, Plaintiff alleges that she was induced into making A. Huff the manager of MMM based on his promise that Plaintiff would share in the profits pursuant to her membership interest, that she did in fact make Defendant A. Huff the manager of MMM, but did not receive her fair share of profits.

However, "estoppel cannot be the basis for a claim if it represents the same performance contemplated under a written contract." Tractor and Farm Supply, Inc. v. Ford New Holland, Inc., 898 F. Supp. 1198, 11206 (W.D. Ky. 1995). "[I]t is a 'widely accepted principle that promissory estoppel is applicable only in the absence of an otherwise enforceable contract[.]'" Shane v. Bunzl Distrib. USA, Inc., 200 F. App'x 397 (quoting Heating & Air Specialists, Inc. v. Jones, 180 F.3d 923, 934 (8th Cir. 1999)) (predicting that the Kentucky Supreme Court would adopt this principle). Plaintiff has asserted a breach of contract claim seeking recovery for the same failed performance on the part of Defendant A. Huff. As such, Plaintiff's promissory estoppel claim fails as a matter of law, and it must be dismissed. See, e.g., Gonzalez v. Imaging Advantage, LLC, 2011 WL 6092469, at *2 (W.D. Ky. Dec. 7, 2011) (dismissing promissory estoppel claim due to presence of written contract and rejecting argument that claim should survive dismissal "in case the contract is 'somehow deemed unenforceable.'"). Accordingly, the Huff Defendants' motion to dismiss this claim is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants Anthony Huff, Sheri Huff, Michele Brown, Anthony Russo, River Falls Investments, LLC, Oxygen Unlimited, LLC, River Falls Equities, LLC, SDH Realty, Inc., W.A. Huff, LLC, The Huff Grandchildren Trust, and Huff Farm (Horsebranch) Inc.'s (collectively "the Huff Defendants") Motion to Dismiss [DN 59] is **GRANTED IN PART** and **DENIED IN PART**. It is **DENIED** as to Plaintiff's breach of fiduciary duty claim against Defendants A. Huff, S. Huff, Brown, and Russo, and Plaintiff's fraud and breach of contract claims against Defendants A. Huff, S. Huff, and Brown. It is **GRANTED** as to all other claims.

23

**IT IS FURTHER ORDERED** that Defendant Brian N. Sly's Motion to Dismiss [DN 60] is **GRANTED IN PART** and **DENIED IN PART**.  It is **DENIED** as to Plaintiff's breach of fiduciary duty claim and is **GRANTED** as to all other claims.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

July 30, 2012

cc: counsel of record