**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 3:11-CV-00207-JHM**

**ROXANN PIXLER**                                                                                 **PLAINTIFF**

**V.**

**ANTHONY HUFF, et. al.**                                                                          **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on motions by Crossclaim Defendants Brian Sly; Anthony Huff; Sheri Huff; Michele Brown; Anthony Russo; Huff Grandchildren's Trust; River Falls Investments LLC; Oxygen Unlimited, LLC; River Falls Holdings, LLC and Huff Farms (Horsebranch) LLC's (collectively "Crossclaim Defendants") to dismiss the cross claim for failure to state a claim [DN 140; DN 144]. Also before the Court is Crossclaim Plaintiff Danny Pixler's motion to dismiss various claims against Crossclaim Defendants [DN 151] and motion for entry of default against Judson Wagenseller [DN 153]. Fully briefed, these matters are ripe for decision.

**I. BACKGROUND**

This case centers around the creation and operation of Midwest Merger Management, LLC ("MMM"). In 2001, Plaintiff Roxann Pixler's (R. Pixler) husband, Danny Pixler ("D. Pixler"), and Anthony Huff ("A. Huff") formed MMM. Danny and Anthony placed their shares in the company in their respective wives' names, making R. Pixler and Sheri Huff ("S. Huff") the only members of the LLC, with each holding a 50% interest. On July 20, 2001, MMM filed its Articles of Organization, which listed two members, R. Pixler and S. Huff. In its 2002 annual report filed with the Kentucky Secretary of State, MMM listed an additional member and/or manager, Michele Brown. In 2006, Anthony Russo became a manager of MMM, and at some point, Brian Sly also

served as either a manager and/or employee of MMM.

MMM was established as a "risk manager." In this line of work, MMM would collect premiums and fees from clients and would in turn pay premiums to insurance carriers that provided workers' compensation insurance coverage. In 2001, MMM acquired Certified Services, Inc., ("Certified") which itself acquired several subsidiaries. A. Huff and D. Huff ran all of these companies, along with several other Kentucky LLCs, using the same working capital and regularly commingling funds. These entities were used to funnel money from MMM for the personal benefit of A. Huff, S. Huff, D. Pixler, Brown, Russo, Sly and others.

On May 12, 2005, the scheme began to unravel as Certified filed for Chapter 11 bankruptcy. In 2006, D. Pixler and A. Huff told R. Pixler that MMM had no value, but that A. Huff would still buy-out R. Pixler's share in the company. R. Pixler then accepted $170,000 from A. Huff for her interest in MMM. At this point, and potentially even earlier, MMM, Certified, A. Huff, and many of the other individual Defendants were engulfed in litigation. See, e.g., S.E.C. v. Huff, 758 F. Supp. 2d 1288 (S.D. Fl. 2010). In 2007, after she had sold her interest, R. Pixler requested a copy of MMM's financial records from Brown, but was told that they were currently unavailable because they were being audited. In 2008, R. Pixler obtained a copy of MMM's financials and discovered a litany of accounting discrepancies demonstrating how the Defendants had used MMM to misappropriate its assets for their own personal gain.

R. Pixler filed suit against Defendants in April of 2011 claiming that Defendants defrauded her out of her contractual right to share in the profits and financial gain of MMM.[1] In August of

---

[1] The Court notes that in separate litigation, where Roxann was a relief defendant, the Securities Exchange Commission requested that Plaintiff be disgorged of any illegally obtained profits received from MMM. The Southern District of Florida found that because Roxann Pixler

2012, Defendant D. Pixler first made an appearance in the litigation by answering Plaintiff's Second Amended Complaint and filing his cross complaint pro se [DN 87]. Crossclaim Plaintiff filed an Amended Cross Complaint on September 11, 2012, and, after the Court granted his motion to amend his Complaint on February 1, 2013, he filed his Second Amended Cross Complaint [DN 133].

### III. DISCUSSION

#### A. Motion To Dismiss Second Amended Cross Complaint

The Second Amended Cross Complaint alleges ten claims against the various Crossclaim Defendants: breach of agreement (Count I); breach of fiduciary duty (Count II); breach of agreement (Count III); breach of contract (Count IV); conspiracy (Count V); fraud (Count VI); accounting fraud (Count VII); conversion (Count VIII); RICO (Count IX); negligence (Count X); and punitive damages (Count XI). [DN 133]. The Court grants Crossclaim Plaintiff's, D. Pixler, motion to dismiss Count III, Count VII, Count VIII, and Count X [DN 151], and thus the Court will only address the remaining crossclaim counts.

Crossclaim Defendants have filed motions to dismiss the Second Amended Complaint arguing the cross complaint alleges fraud but fails to satisfy the requirements of Fed. R. Civ. P. 9(b); the cross complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6); and improper cross claim practice under Fed. R. Civ. P. 13(g). Crossclaim Defendants state that "Plaintiff Roxann Pixler's remaining claims relate to (i) breach and/or fraud relating to the operating agreement(s) of Midwest

---

only received one $60,000 distribution from MMM and she "paid the money she received from Midwest to the federal government in taxes without enjoying a corresponding income or other benefit from Midwest, the Court concludes that disgorgement is not appropriate." Huff, 758 F. Supp. 2d at 1362. To the extent Plaintiff now claims that she was entitled to additional distributions, the Court is unsure that she would be entitled to keep any award representing lost profits or distributions from MMM. However, as this is only a motion to dismiss, the Court reserves this issue for another day.

Merger Management, LLC, (ii) a failure to disclose alleged improper transfers of assets out of MMM, and (iii) the partial buyout of Ms. Pixler's MMM membership interest (the 'Surviving Claims')." (Cross-Claim Defs.' Motion to Dismiss, 3 [DN 140].)

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief[,]" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678, 679. Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### i. Breach of Agreement (Count I)

In the Second Amended Complaint, D. Pixler asserts that he advanced $429,650.20 to Anthony Huff and Michele Brown as an investment with Oxygen Unlimited II, LLC. Allegedly, the investment was to have monthly or annual principal payments until it was paid back in full with 10% interest. D. Pixler was never paid.

Crossclaim Defendants first state that this claim does not relate to any Surviving Claims and

4

must be dismissed. Second, they argue that the agreement D. Pixler alleges was to continue for more than one year and KRS 371.010(7) "provides that one may not enforce an agreement not to be performed in on year unless in writing and signed by the party charged with non-performance." (Crossclaim Defs.' Mot. to Dismiss, 4 [DN 140].) Third, Crossclaim Defendants argue that the statute of limitations for enforcement of an oral promise is five years under KRS 413.120(1) and D. Pixler filed the Cross Complaint in August of 2012, after the limitations has run. Lastly, Crossclaim Defendants contend that D. Pixler failed to assert that he had a contract with the Crossclaim Defendants with respect to the investment which they actually breached. Crossclaim Defendant Sly reiterates these arguments in his motion.

In response, D. Pixler states it is an oral agreement, and up until October of 2009 he was still in contact with the Crossclaim Defendants regarding the agreement. He asserts they continued to make timely payments through March of 2010. D. Pixler states that the last payment should trigger the statute of limitations.

The statute of frauds provides that no action shall be brought to charge any person on any agreement that is not to be performed within one year from the making of the agreement; and on any promise, contract, agreement, undertaking, or commitment to loan money unless the commitment is in writing and signed by the party to be charged. KRS § 371.010(7); KRS § 371.010(9). "In construing the Statute of Frauds, the general rule is that, if a contract may be performed within a year from the making of it, the inhibition of the Statute does not apply, although its performance may have extended over a greater period of time." Sawyer v. Mills, 295 S.W.3d 79, 84 (Ky. 2009) (quoting Williamson v. Stafford, 190 S.W.2d 859, 860 (1945). However, "when it was contemplated by the parties that the contract would not, and could not, be performed within the year, even though

5

it was possible of performance within that time, it comes within the inhibition of the Statute." Id. (quoting Williamson, 190 S.W.2d at 860).

The Court finds that the Statute of Frauds applies to the sum that D. Pixler advanced to Crossclaim Defendants. The alleged agreement for repayment appears to be a transaction that would take over a year to complete as D. Pixler states he was to receive monthly or annual principle payments until he was paid in full. In the Second Amended Complaint, D. Pixler does not state any particular agreement terms in regard to the repayment of the amount, but in his response he states that the Crossclaim Defendants were making timely payments until March 2010 even though the original agreement occurred in November of 2006. This gives the Court the impression that the parties' intentions of the alleged agreement were that it would not be completed within one year. (See D. Pixler Resp., 12 [DN 150].) Additionally, the Second Amended Complaint discusses D. Pixler's investment with Oxygen Unlimited II, LLC, however, in reality, D. Pixler describes a loan to Oxygen, that was to be paid in monthly or annual principal payments at an annual rate of ten percent. KRS 317.010(9) states that agreements to loan money to establish or assist a business enterprise or an existing bussiness enterprise, must be in writing and signed by the party to be charged. As a matter of law, the Court finds that the oral agreement fails the writing requirement of the statute of frauds, and is unenforceable under KRS § 371.010(7) and KRS § 371.010(9). Therefore, Count I, breach of agreement, is dismissed. The Court will not address whether this claim arises out of the transaction or occurrence as R. Pixler's Second Amended Complaint.

### ii. Breach of Fiduciary Duty (Count II)

Count II of the Second Amended Cross Complaint alleges that the Crossclaim Defendants owed a fiduciary duty of loyalty and responsibility to D. Pixler with regards to funds transferred to

6

MMM "for the benefit of D. Pixler and Certified customers for pending and filed Worker's Compensation claims under the Risk Allocation Agreement ('RAA')." (Second Am. Cross Complaint, ¶ 12 [DN 133]. Crossclaim Defendants first argue that this claim does not relate to a Surviving Claim and must be dismissed. Second, they argue that a five year statue of limitations applies to a breach of fiduciary duty claim and the alleged misappropriation of funds occurred between 2002 and 2006. As D. Pixler filed his initial Cross Complaint in August of 2012, the Crossclaim Defendants reason that the statute of limitations period had expired. Lastly, the Crossclaim Defendants argue that the RAA does not imply a fiduciary duty, and if it did, it would run from MMM to Certified Services, Inc. ("Certified"), not from Crossclaim Defendants to D. Pixler. "Under the RAA, Certified sent money to MMM on behalf of Certified's customers - not Danny Pixler, Certified's President." (Crossclaim Defs.' Mot. to Dismiss, 5 [DN 140].)

Kentucky law describes fiduciary duty as "one founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." Hinton Hardwoods, Inc. v. Cumberland Scrap Processors Transport LLC., 2008 WL 5429569, *6 (Ky. Ct. App. Dec. 31, 2008) (quoting Steelvest, Inc. v. Scansteel Service Center, Inc., 807 S.W.2d 476, 485 (Ky.1991)). In order to prevail on a claim for breach of fiduciary duty, a plaintiff must establish that (1) the defendant owes a fiduciary duty to him; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a result of the breach. Id. (citing Sparks v. Re/Max Allstar Realty, Inc., 55 S.W.3d 343, 348 n. 15 (Ky. Ct. App.2000)).

The Second Amended Cross Complaint incorporates the facts in the Cross Complaint filed

August 24, 2012. In early 2002 MMM had taken the duties of a risk manager for Certified Services, Inc. D. Pixler states that the Risk Allocation Agreement established the duties of MMM as a Risk Manager. MMM "was to provide expert insurance advice by A. Huff and to liquidate Worker's Compensation claims and to pay the Worker's Compensation premiums for Certified Services from the fiduciary funds[.]" (Cross Complaint, p. 15 [DN 87].) Among several other methods of income, MMM allegedly generated cash by taking a percentage of the fiduciary funds for the Worker's Compensation claims and premiums from Certified Services, Inc. The Cross Complaint states that between 2002 and 2006 more than $100 million of fiduciary funds flowed into MMM and more than $20 million of income. (Id. [DN 87].) D. Pixler's response states that Certified Services, Inc. "remitted approximately $120,014,783 of trusted funds to MMM from approximately March 2002 through approximately September 2005 under the terms of the RAA." (D. Pixler's Resp., 14 [DN 150].) While his response alleges that there was continued behavior by Crossclaim Defendants beyond 2006, the fraud claim only addresses the "maintenance of entrusted funds, transferred to Midwest Merger Management, LLC ("MMM") for the benefit of D. Pixler and Certified Customers for pending and filed Worker's Compensation claims under the Risk Allocation Agreement." (Second Am. Compl. ¶ 12 [DN 133].) The facts state that the activities at issue under the Risk Allocation Agreement took place between 2002 and 2006.

     Under Kentucky law, a claim for breach of fiduciary duty falls under the five year limitation. KRS § 413.120(7). See Ingram v. Cates, 74 S.W.3d 783, 787 (Ky. Ct. App. 2002); Bariteaur v. PNC Financial Services Group, Inc., 285 Fed. Appx. 218, 223 (6th Cir. 2008). D. Pixler first filed his Cross Complaint on August 24, 2012, well over five years since the activities he alleges breached the fiduciary duty. The Court holds that as a matter of law the statute of limitations has run on his

breach of fiduciary duty claim. Therefore, the Court grants Crossclaim Defendants' motion to dismiss as to the breach of fiduciary duty claim.

### iii. Breach of Contract (Count IV)

D. Pixler states that in October of 2007, he and A. Huff met and discussed an agreement that was to last five years in which Oxygen Unlimited II, LLC ("Oxygen") was to pay G. Thomas Companies, LLC a total of $960,000 in consideration for the introduction of business opportunities to Oxygen Unlimited II, LLC. The only signature on the contract is Danny Pixler's as an agent for G. Thomas Companies. (Contract, p. 47 [DN 133]. The Second Amended Cross Complaint states that a total of 83 checks were tendered to GThomas Companies according to the terms of the contract, but they stopped in February of 2010.

Crossclaim Defendants first state that this claim does not relate to a Surviving Claim and should be dismissed. Second, Defendants argue that D. Pixler does not have standing as the contract was between G. Thomas and Oxygen, rather than Pixler. Third, Cross-Claim Defendants point out that this claim makes no allegation relating to S. Huff or Brown, so the claim must be dismissed as to them. Lastly, Crossclaim Defendants assert the statute of fraud since the party to be charged never executed this contract.

In response, D. Pixler argues he was the intended beneficiary of the contract, and therefore has standing. As to the statute of frauds defense, D. Pixler asserts that A. Huff refused to sign the written contract, but the 83 timely payments are evidence of the agreement and acknowledgment of the Contract.

As stated previously, the statute of frauds provides that no action shall be brought to charge any person on any agreement that is not to be performed within one year from the making of the

9

agreement unless the contract, "or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent." KRS § 371.010(7). D. Pixler acknowledges that this agreement was to take place over the course of five years. As a matter of law, the Court finds that since the parties to be charged never signed the contract, the agreement fails the writing requirement of the statute of frauds, and is unenforceable under KRS § 371.010(7). Therefore, Count IV, breach of contract, is dismissed. The Court will not address whether this claim arises out of the transaction or occurrence as R. Pixler's Second Amended Complaint.

### iv. Conspiracy (Count V)

D. Pixler states that the acts and conduct of the Crossclaim Defendants "constitute a combination to engage in conduct for and/or in furtherance of an unlawful means, and have entered into an express or implied agreement to accomplish the common design of conspiracy." (Second Am. Compl. ¶ 29 [DN 133].) Crossclaim Defendants argue that this claim must be dismissed because it fails to allege any facts supporting the claim. Crossclaim Defendants assume that this is a conspiracy in breach of fiduciary duty claim, and since the breach of fiduciary duty claim fails, so must the conspiracy claim. In his motion to dismiss, Sly reiterates stating that there are no facts to support his claim and D. Pixler fails to identify any duties owed by Sly to D. Pixler.

In response, D. Pixler states that he has met the requirement to establish a civil conspiracy. He argues that a single plan existed, "the defendants shared in the general conspiratorial objective to deprive the plaintiff of constitutional or federal statutory rights;" and "an overt act was committed in furtherance of the conspiracy that caused injury to the plaintiff[.]" (D. Pixler's Resp., 21 [DN 150].)

Under Kentucky law, civil conspiracy has been defined as "a corrupt or unlawful

combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC, 277 S.W.3d 255, 260–61 (Ky.App. 2008) (citation omitted). "[C]ivil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V., 2010 WL 2696278, at *13 (Ky .Ct. App. July 9, 2010). D. Pixler has failed to identify an underlying tort in his Complaint. As conspiracy is not a free standing claim, as a matter of law, D. Pixler can not bring a claim for conspiracy and this claim must be dismissed.

**v. Fraud (Count VI)**

The Second Amended Cross Complaint alleges that Defendants engaged in acts of deceit, false promises, material misrepresentation and material omissions toward D. Pixler, and they acted with intent and concealment. (¶¶ 34, 35 [DN 133].) D. Pixler also asserts that Crossclaim Defendants created alter egos for the purpose of fraud. Crossclaim Defendants acknowledge that the Second Amended Complaint incorporates the facts set out in the Cross Complaint [DN 87], however, Cross-Claim Defendants argue that D. Pixler makes liberal use of the word fraud, but has failed to satisfy the particularity requirement of Fed. R. Civ. P. 9(b). They also argue that D. Pixler's claims are alleging conversion of MMM funds which are derivative claims. Crossclaim Defendants state that the Court has already ruled that an individual, such as D. Pixler, does not have standing to bring this claim in his individual capacity.

D. Pixler responds stating that the facts alleged in the Cross Complaint and the Second Amended Cross Complaint, when taken together demonstrate a suspicious scheme. D. Pixler asserts that the Crossclaim Defendants intentionally, negligently and fraudulently conspired against him.

In the alternative, D. Pixler requests that the Court allow him to amend his complaint.

The notice pleading standard of Fed. R. Civ. P. 8(a) requires only that a plaintiff set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Rule 9(b) augments the notice requirement of Rule 8(a) in certain cases, requiring that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 563 (6th Cir. 2003) (quoting Coffey v. Foamex L.P., 2 F.3d 157, 161–162 (6th Cir. 1993)). Rule 9(b) also requires that the circumstances surrounding misrepresentations be pled with particularity. Evans v. Pearson Enters., 434 F.3d 839, 852 (6th Cir. 2006).

D. Pixler's facts as set out in the Cross-Claim Complaint [DN 87] refer to general statements alleging that A. Huff and M. Brown misappropriated millions of dollars, and took great care to conceal their fraud. However, the Court finds that the Second Amended Cross-Complaint is defective in that it does not plead the circumstances surrounding the alleged fraud with particularity. It makes no references to time, place and content to enable proper responsive pleadings. D. Pixler appears to surmise that fraud took place but does not point to a single instance of fraudulent activity, only discusses the alleged scheme as a whole.

The Court has discretion whether to allow D. Pixler the opportunity to amend his Second Amended Cross Complaint. D. Pixler initially filed his cross complaint in his answer to Plaintiff's Second Amended Complaint on August 24, 2012 [DN 87]. On September 11, 2012, he filed his

First Amended Cross Complaint as to Accredited Investor Resources, LLC f/k/a Oxygen Investment Partners, LLC, Brian Sly and Anthony Huff. Cross-claim Defendants filed motions to dismiss the Complaint and Amended Complaint under Fed. R. Civ. P. 8 because it lacked a short and plain statement of the claims, because the cross complaint alleges fraud but fails to satisfy the requirements of Fed. R. Civ. P. 9(b), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). [DN 88, DN 90, DN 96]. On January 31, 2013, this Court allowed D. Pixler to amend his Complaint to cure deficiencies.

Fed. R. Civ .P. 15(a) states that "A party may amend its pleading once as a matter of course ... In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." The determination of whether the circumstances of a case are such that justice would require the allowance of an amendment is committed to the sound discretion of the district court. Hayden v. Ford Motor Co., 497 F.2d 1292, 1294 (6th Cir.1974). A trial court may consider a number of factors in making this determination, including undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice, futility of the amendment, or the repeated failure to cure deficiencies by amendments previously allowed. Foman v. Davis, 371 U.S. 178, 182 (1962). In the absence of any of these factors, a plaintiff should be afforded the opportunity to amend her complaint. Id. Aside from assertions that this request to amend was not properly raised, the Court finds that D. Pixler had opportunities to cure the deficiencies and was unable to meet the requirements of Fed. R. Civ. P. 9(b). Therefore, the Court will not allow D. Pixler to amend his Second Amended Cross-Complaint and, as a matter of law, his fraud claim fails.

### vi. RICO (Count IX)

The Second Amended Complaint alleges that, under 18 U.S.C. § 1962(c), Cross-Claim Defendants "conducted or participated in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." (Second Am. Compl. ¶ 49 [DN 133].) Crossclaim Defendants argue that D. Pixler failed to adequately allege the elements required to prove a civil RICO claim. They point out that the Sixth Circuit has asserted "that to state a RICO claim plaintiffs must plead the following elements: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." (Crossclaim Defs.' Mot. to Dismiss, 10 [DN 140] (citing Moon v. Harrison Piping Supply, 465 F.3d 719, 723 (6th Cir. 2006))). Specifically, Crossclaim Defendants argue that D. Pixler failed to identify how the RICO enterprise was engaged in interstate commerce, failed to identify the RICO "enterprise," and failed to identify and allege RICO predicate acts conducted through a RICO enterprise.

Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act makes it "unlawful for any person employed by or associated with any enterprise engaged in" activities affecting "interstate or foreign commerce ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c). In order to prove a violation of this section of the RICO Act, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985) (footnote omitted); see also Moon v. Harrison Piping Supply, 465 F.3d 719, 723 (6th Cir. 2006). To plead a pattern of racketeering activity, the plaintiff must allege at least two predicate acts, although that may not be sufficient. Estate of Wyatt v. WAMU/JP Morgan Chase Bank, 2012 WL 933289 (E.D. Mich. March 20, 2012) (citing Brown v.

14

Cassens Transp. Co., 546 F.3d 347, 354 (6th Cir. 2008)). "Only those acts itemized in 18 U.S.C. § 1961(1) can constitute predicate offenses for RICO violations." Frank v. D'Ambrosi, 4 F.3d 1378, 1385 (6th Cir. 1993).

D. Pixler has failed to list two predicate acts in his Second Amended Complaint and his other allegations cannot support a RICO violation. See 18 U.S.C. § 1961(1). He vaguely states that Crossclaim Defendants participated in a "scheme to defraud knowing or having reason to anticipate the use of the mail or wires would occur[.]" (Second Am. Compl. ¶ 48 [DN 133].) These allegations appear to be guesses that mail fraud or wire fraud occurred. There is absolutely no evidence to support his surmise. As stated previously, a plaintiff must provide the ground for his entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Therefore, the Court finds that, as a matter of law, D. Pixler has failed to state a claim under RICO.

### vii. Punitive Damages (Count X)

D. Pixler has requested an award of punitive damages due to the alleged fraud. As the Court has dismissed D. Pixler's fraud claim, along with all of his other claims, he is not entitled to punitive damages.

Therefore, the Cross-Claim Defendants' motions to dismiss are granted. [DN 140; DN 144].

### B. Motion For Entry of Default

D. Pixler has filed a motion for entry of default against Third-Party Defendant Judson Wagenseller stating that Wagenseller has not answered or responded to D. Pixler's Second Amended Cross-Claim and his First Amended Third-Party Complaint. Additionally, D. Pixler asserts that Wagenseller has failed to respond to D. Pixler's request for admissions. D. Pixler states that he

effectuated proper service on Wagenseller under Fed. R. Civ. P. 4(d) and Wagenseller failed to sign and return the waivers. As evidence, D. Pixler provided the Notices of Lawsuit and Requests to Waive Service of Summons he sent to Wagenseller on September 17, 2012 and December 14, 2012.

In response, Wagenseller states that he has not been served and D. Pixler's motion should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction; Fed. R. Civ. P. 12(b)(4) for insufficient process; and Fed. R. Civ. Pro. 12(b)(5) for insufficient service of process. Wagenseller argues that the docket shows no indication of service. Under Fed. R. Civ. P. 4(a)(1), Wagenseller contends that a summons must be 'directed to the defendant,' and it must be 'signed by the clerk; and bear the court's seal."

"Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties." O.J. Distributing, Inc. v. Hornell Brewing Co., Inc., 340 F.3d 345, 353 (6th Cir. 2003). "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as a defendant." Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). The Supreme Court has stated that a defendant "becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." Id. (citing Fed. R. Civ. P. 4(a)).

The Court notes that D. Pixler attempted twice to receive a waiver of summons pursuant to Rule 4(d). Fed. R. Civ. P. 4(d). However, it is undisputed that D. Pixler did not receive a waiver of summons. Because Wagenseller did not give his consent to waive service, D. Pixler was required to follow the formal procedure for service of process. See O.J. Distributing, Inc., 340 F.3d at 354. The Sixth Circuit has indicated "that it will not allow actual knowledge of a lawsuit to substitute for

proper service under Fed. R. Civ. P. 4." LSJ Inv. Co., Inc. v. O.L.D., Inc., 167 F.3d 320, 322 (6th Cir. 1999). When facts are not in dispute, the determination of adequate service of process is a matter of law. Id. (citing Friedman v. Estate of Presser, 929 F.2d 1151, 1154 (6th Cir. 1991). Since Wagenseller did not waive service of process, and D. Pixler never followed the formal procedure for service of process, the Court may not exercise power over Wagenseller. Therefore, D. Pixler's motion for default judgment against Wagenseller is denied.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Crossclaim Plaintiff Danny Pixler's motion to dismiss various claims [DN 151] is **GRANTED**. Crossclaim Defendants Brian Sly; Anthony Huff; Sheri Huff; Michele Brown; Anthony Russo; Huff Grandchildren's Trust; River Falls Investments LLC; Oxygen Unlimited, LLC; River Falls Holdings, LLC and Huff Farms (Horsebranch) LLC's (collectively "Cross Claim Defendants") motions to dismiss the cross claim for failure to state a claim [DN 140; DN 144] are **GRANTED**.

**IT IS FURTHER ORDERED** that Third Party Plaintiff Danny Pixler's motion for entry of default [DN 153] is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

July 12, 2013

cc: counsel of record